In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 06-1414

DIEGO GIL,

*Plaintiff-Appellant*,

*v.*

JAMES REED, JAMES PENAFLOR,
and UNITED STATES OF AMERICA,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 00-C-0724-C—**Barbara B. Crabb**, *Chief Judge.*

_____

ARGUED APRIL 2, 2007—DECIDED JULY 23, 2008

_____


Before RIPPLE, ROVNER, and WOOD, *Circuit Judges.*

ROVNER, *Circuit Judge.* This is the second time that we have heard this case and the second time that we vacate the district court's grant of summary judgment for the defendants. *See Gil v. Reed*, 381 F.3d 649 (7th Cir. 2004). Diego Gil, a federal prisoner, sued a prison doctor, a physician's assistant, and the United States for negligence and malpractice under the Federal Tort Claims Act. He also claimed that they were deliberately indifferent to his medical needs in violation of the Eighth Amendment. In Gil's first appeal we concluded that he

had presented a genuine issue of material fact regarding whether prison personnel were deliberately indifferent to his medical needs. On remand the defendants supplemented the record with new evidence, including an expert report, several declarations, and depositions of two witnesses, including Gil. Based on that evidence, the district court granted summary judgment for the defendants a second time. We once again vacate the district court's judgment and remand the case for trial.

## I.

A full factual recitation appears in our opinion in Gil's first appeal, and so, repeating our warning that this case is not for the squeamish, we briefly recount the relevant facts construed in the light most favorable to Gil. *See Gil*, 381 F.3d at 651-54. Gil, who has long suffered from intestinal problems, has been incarcerated in federal prison since 1993 and is currently housed at the Federal Correctional Institution in Oxford, Wisconsin. In March 1998 Gil had surgery to repair a rectal prolapse, an unpleasant condition in which the rectal wall slides out of place and protrudes from the anus, usually during bowel movements. The surgery was not a success and Gil's condition worsened, but when he asked prison staff for medical aid a physician's assistant dismissed his visit to the prison medical center as a "misuse of emergency care." Gil showed the physician's assistant an infection near his surgical incisions, but he was instructed to return to his unit.

Gil did not receive any medical care for several days, and when doctors finally examined him, his infection had grown to a golf-ball-sized bulge, which the prison staff

lanced and drained. The prison staff noted that Gil had an "infection/cellulitis/abscess formation at surgical site" and prescribed an antibiotic and Tylenol III, a pain-killer. Gil was informed that the drugs would be available at the prison's medication line later that day and that he should start taking them immediately. As instructed Gil went that evening to the medication line, where defendant Jaime Penaflor, a physician's assistant employed by the prison, was dispensing medicines. Penaflor angrily refused to give Gil the prescribed antibiotic, and when Gil asked why he could not have his medication, Penaflor threatened him with disciplinary segregation. The next day Gil successfully obtained the antibiotics from a different medical staff member. Within 24 hours Gil felt better, although he had to return to the medical unit several times so the infected bulge could be lanced and drained.

Despite the surgery Gil's medical condition continued to deteriorate. His rectum prolapsed again, and so he had to push his protruded rectum back into his body after every bowel movement. Prison staff repeatedly denied Gil's requests to see a colorectal surgeon who could give him specialized advice regarding his medical options, but they finally allowed Gil to see a specialist a year and a half later. That physician, Dr. Michael Kim, performed a second rectal prolapse surgery on Gil in May 2000. Following the surgery, Dr. Kim prescribed Milk of Magnesia, Colace, and Metamucil—all laxatives—to prevent fecal impaction, as well as Vicodin to treat his pain. Dr. Kim specifically warned Gil against taking Tylenol III because it caused constipation, which would worsen his condition. Prison medical staff gave Gil everything Dr. Kim had prescribed except for Vicodin, which is evidently not included on the formulary

of drugs used by the Bureau of Prisons. Instead prison staff substituted Tylenol III.

The next day Gil saw Dr. James Reed, the second defendant in this case and the prison's clinical director. Gil and Reed had a history of bad blood. After Gil's first surgery in 1998, Gil sued Reed for violating his Eighth Amendment rights by unreasonably delaying his surgery.[1] Reed was openly hostile toward Gil after he filed suit; on one occasion he made Gil wait for 6 hours past his scheduled appointment time and then berated Gil for seeking his medical assistance after suing him. When Gil met with Reed the day after his second surgery, his suit against Reed was still pending. At that appointment Gil told Reed that Dr. Kim had warned him not to take Tylenol III. Reed prescribed it nonetheless and then cancelled Gil's prescriptions for Metamucil and Milk of Magnesia, although he knew that Gil was suffering from constipation. Gil saw Reed again three days later and unsurprisingly complained of constipation, reporting that he had not had a bowel movement since the operation five days before, that he could not urinate, and that he was experiencing pain in his abdomen and bleeding from his rectum. Although Reed agreed to renew Gil's Milk of Magnesia prescription, the prison pharmacy did not fill it for another three days. Reed also prescribed Gil Tylenol III once again despite Dr. Kim's warning against it.

On May 9, 2000, Gil, still constipated, bleeding, and in pain, scheduled another appointment with Reed. Reed,

---

[1] The district court ultimately granted the defendants' motion for summary judgment in that suit. *See Gil v. Jones*, No. 99-C-38-C, 2000 WL 34235979, at *3 (W.D. Wis. July 20, 2000).

however, was not available at the scheduled time, and Gil waited for one hour before returning to his cell to lie down and stanch his bleeding. The next day a different prison physician advised Gil to stop taking Tylenol III immediately and substituted Motrin. Two days later Gil saw Dr. Kim, who was angry that Reed had prescribed Tylenol III in violation of his post-surgical instructions. Dr. Kim rewrote his original prescriptions, this time appending a note requesting that prison staff follow his instructions, and repeated to Gil his warning against Tylenol III. Reed nonetheless prescribed Tylenol III for a third time, and when Gil went to the medication line to pick up his prescriptions Penaflor gave him only Tylenol III. Medical staff finally provided Gil with the correct medications the next day.

Frustrated with his medical care at the prison, Gil brought this action on December 21, 2000, suing the United States for negligence and medical malpractice under the Federal Tort Claims Act ("FTCA") and suing Reed and Penaflor for violating his Eighth Amendment rights. Gil's complaint alleged that Penaflor's refusal to give him prescribed antibiotics and Reed's failure to follow Dr. Kim's instructions amounted to deliberate indifference of his serious medical needs, negligence, and malpractice. Gil also alleged miscellaneous malpractice and negligence claims under the FTCA based on the unavailability of medical care following his first surgery, the delay in receiving his second surgery, and other acts of prison officials and medical staff. On the defendants' summary judgment motion, the district court found that because Gil had failed to retain an expert witness as required by Wisconsin law and instead named only the doctors who had treated him, he could

not as a matter of law produce the expert testimony necessary for his FTCA claims to show that his treatment did not meet a reasonable standard of care. The court next concluded that Gil had produced no evidence that he was harmed by Penaflor's actions. The court also found that the evidence did not support a claim for Reed's deliberate indifference to serious medical needs because he and Dr. Kim had simply had a difference of opinion regarding Gil's post-surgical care. The court therefore granted summary judgment for the defendants on both the FTCA claims and the Eighth Amendment claims. The court also denied Gil's requests for appointed counsel.

Gil appealed, and we vacated the district court's grant of summary judgment, reversed the denial of Gil's motions for appointed counsel, and remanded the case to the district court. *Gil*, 381 F.3d at 664. We held that the district court erred when it ruled that, because Gil had failed to provide an expert witness, his FTCA claims could not survive summary judgment. We concluded that Gil's FTCA claims should survive summary judgment under Wisconsin's expertise rules because Gil was permitted to rely on his treating physicians to establish the standard of care. *Id.* at 659-60. Furthermore, we reasoned, under Wisconsin law *res ipsa loquitur* could obviate the need to establish the standard of care through expert testimony. *Id.* at 661. We also decided that the district court erred in granting summary judgment on Gil's Eighth Amendment claims because Penaflor's angry refusal to provide needed antibiotics was sufficient to create a genuine issue of fact regarding his state of mind, *id.* at 661-62, and Reed's actions raised a genuine issue of material fact regarding

whether he was deliberately attempting to prolong or exacerbate Gil's constipation, *id.* at 664. Therefore, we explained, there was a genuine issue of material fact regarding whether Reed's and Penaflor's conduct constituted deliberate indifference to Gil's medical needs. *Id.* at 662-63.

On remand, the defendants submitted declarations from Reed and Penaflor, expert testimony from a colorectal surgeon, Dr. Bruce Harms, and Dr. Kim's deposition testimony. Penaflor, responding to Gil's claims against him, stated that he did not remember denying Gil antibiotics but nonetheless he "would not have purposefully denied Mr. Gil the antibiotic in an effort to cause him harm or discomfort." Dr. Harms, the expert witness, opined that drainage, not antibiotic therapy, is the primary treatment for an abscess like the one Gil had, and he stated that he does not "put patients on antibiotics unless they have a significant spreading of cellulitis," a skin infection. Dr. Harms also claimed that delaying antibiotic therapy by 12 hours would not, in Gil's case, "significantly affect abscess treatment or cause additional pain or suffering by the patient." Dr. Kim, testifying as an expert because he was not involved in Gil's first surgery, stated that antibiotics do not relieve pain and that the delay in Gil's receipt of antibiotics would not "increase the chances that there could be a severe infection."

The defendants also submitted new evidence regarding the claims against Reed. Reed stated in his declaration that he discontinued Dr. Kim's prescriptions for Milk of Magnesia and Metamucil after Gil's second surgery because, in his view, they might cause severe dehydration. Reed maintained that he continued to pre-

scribe Colace "to prevent fecal impaction from the codeine in the Tylenol III." Dr. Kim testified, however, that he was "unhappy" when he discovered that Reed had given Gil Tylenol III instead of Vicodin because in his experience Tylenol III caused more severe constipation than Vicodin. Dr. Kim conceded, however, that the two medicines were equally effective at controlling pain. Dr. Kim described his conflict with Reed over which pain medication to use as a mere "professional disagreement" and opined that Gil had not, in his estimation, received substandard care. He also testified that Metamucil and Milk of Magnesia should not cause dehydration. Dr. Harms, for his part, declared that Vicodin and Tylenol III are "interchangeable as pain medications with similar therapeutic effects and risks" and that Milk of Magnesia and Metamucil are "optional" postoperative treatments. Dr. Harms also believed that Gil's medical treatment did not fall below the standard of care provided in the community.

The defendants again moved for summary judgment and the district court again granted their motion. The court concluded that Gil's Eighth Amendment claim against Penaflor could not survive summary judgment because Gil had failed to raise an issue of material fact regarding whether he was harmed by Penaflor's refusal to give him the antibiotic. The court reasoned that Dr. Kim's deposition testimony that antibiotics have no pain-killing effect (thus eliminating any possibility that Gil suffered increased pain when Penaflor withheld his antibiotics), together with Dr. Harms's opinion that the delay in giving Gil his medications would not affect his recovery from surgery, removed any factual dispute regarding whether Gil was harmed by Penaflor's actions.

The court next concluded that a reasonable trier of fact could not infer from Reed's failure to follow Dr. Kim's recommendations that Reed acted with deliberate indifference when he prescribed Tylenol III instead of Vicodin and simultaneously cancelled Gil's prescriptions for Metamucil and Milk of Magnesia. The court placed particular weight on Dr. Kim's and Dr. Harms's opinions that Gil's post-operative treatment was medically proper. The court also credited Reed's explanation that he cancelled Gil's prescriptions for Metamucil and Milk of Magnesia because those drugs would dehydrate Gil and characterized Reed's failure to follow Dr. Kim's instructions as a difference of opinion between medical professionals. The court concluded that Gil had not shown an issue of material fact regarding Reed's state of mind when he disobeyed Dr. Kim's instructions.

Finally, the district court granted summary judgment for the United States on Gil's FTCA claims. The court found that, because Gil had not retained an expert in accordance with Wisconsin law, he had presented no evidence to rebut Dr. Kim's and Dr. Harms's testimony regarding the standard of care, thus eliminating any potential factual question.

II.

On appeal Gil first argues that the district court erred when it granted summary judgment on his Eighth Amendment and FTCA claims regarding Penaflor's actions because the court's rationale for those decisions—that Gil had failed to present evidence that he was harmed by Penaflor's actions—had already been rejected by this court in his first appeal and the new evidence on

remand did nothing to revise that conclusion. Gil also contends that his Eighth Amendment claim against Reed should be allowed to go forward because there is enough evidence in the record to show that Reed was deliberately indifferent to his serious medical needs. Finally Gil asserts that he should be allowed to proceed on his FTCA claims based on Reed's actions because he has presented evidence that Reed's post-operative treatment violated the standard of care.

The standard for reviewing a district court's grant of summary judgment is a familiar one, but it bears repeating here. We review de novo a district court's decision on summary judgment, and we construe all facts and draw all inferences from those facts in favor of the nonmoving party. *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000). The district court may grant a motion for summary judgment only if there is no genuine issue regarding any material fact. *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1103-04 (7th Cir. 2008); FED. R. CIV. P. 56(c). To overcome a motion for summary judgment, the record must contain only enough evidence that a "jury could reasonably find for the nonmoving party." *Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008).

## A.

The Eighth Amendment imposes a duty on government officials to provide medical care to prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *see also Williams v. Liefer*, 491 F.3d 710, 714 (7th Cir. 2007). Prison officials violate the Eighth Amendment when they are deliberately indifferent to a prisoner's serious medical needs. *Estelle*, 429 U.S. at 104; *Williams*, 491 F.3d at 714.

In this case, the district court concluded that Gil had not shown that he was harmed by Penaflor's refusal to fill his prescription for antibiotics. That conclusion is flatly contradicted by our opinion in Gil's first appeal, where we concluded that he had provided enough evidence to create a question of fact on the issue of harm. We observed that "we need not check our common sense at the door" in analyzing Gil's injury and that a "delay in providing antibiotics will necessarily delay the curing of the infection or possibly lead to its spread." *Gil*, 381 F.3d at 662. Dr. Kim's and Dr. Harms's testimony do not undermine that common-sense conclusion. First, Dr. Harms's opinion that the delay in receiving antibiotics did not harm Gil was based on cases where the patient does not suffer from cellulitis. But prison medical staff diagnosed Gil with cellulitis just hours before Penaflor denied his prescription. Drawing all inferences in favor of Gil, Dr. Harms's testimony *supports* the conclusion that an antibiotic was necessary for Gil's post-surgical recovery. Furthermore, the very fact that prison medical staff prescribed him an antibiotic is evidence permitting the inference that the drug was medically necessary.

Second, Dr. Kim's testimony that antibiotics have no "pain relieving effect" does not refute the considerable evidence that Gil's infection caused him pain, that antibiotics were necessary to cure that infection, and that he felt better once he received the antibiotics. A drug that cures a painful ailment but is not itself a painkiller can still reduce harm, and conversely, withholding that drug can cause harm. In concluding that Gil had not shown he was harmed, the district court placed much weight on Dr. Kim's testimony that withholding antibiotics

would only cause injury to patients who suffered from soft-tissue infections so severe that they would require hospitalization. But there is no evidence that Gil was *not* suffering a severe infection aside from the fact that he was not hospitalized, and although people with severe infections may usually require hospitalization, there is no evidence in the record suggesting that they always do. Although the record contains new evidence, our conclusion remains the same: Gil has raised a question of fact on the issue of whether Penaflor harmed him by withholding his antibiotics.

Nor is Reed entitled to summary judgment on Gil's Eighth Amendment claim. In Gil's first appeal, we concluded that "prescribing on three occasions the very medication the specialist warned against because of its constipating effect (when a non-constipating alternative was available) while simultaneously cancelling the two of the three prescribed laxatives gives rise to a genuine issue of material fact about Reed's state of mind." *Gil*, 381 F.3d at 664. The new evidence in the record does not undermine this conclusion; instead, the new evidence submitted on remand is susceptible to multiple interpretations that must be resolved by a fact-finder. Reed's declaration, in which he admits that he prescribed Gil a laxative to counteract the constipating effects of Tylenol III, leaves little doubt that he knew the drug could constipate Gil. Moreover, even if Reed had not understood Tylenol III's adverse side effects, Gil relayed to him Dr. Kim's warning against the drug. And the factual record on whether Gil's other prescribed drugs caused dehydration (Reed's explanation for withholding them) is inconclusive: Reed says they do, Dr. Kim says they do not. In any case, Gil has presented suf-

ficient evidence to call into question Reed's state of mind
when switching from Vicodin to Tylenol III and sim-
ultaneously cancelling the laxatives. This is precisely
the kind of contested factual issue that cannot be resolved
at the summary judgment stage and instead requires
interpretation by a fact-finder. Although Dr. Kim later
testified that he did not believe that Reed provided Gil
with substandard care, this conclusion contradicts his
earlier anger when Reed refused to follow his instruc-
tions. *See Gil*, 381 F.3d at 653. A reasonable jury
could disregard Dr. Kim's and Dr. Harms's conclusory
standard-of-care opinions and instead rely on other
evidence in the record to conclude that Reed acted with
deliberate indifference to Gil's serious medical needs.
*See Walker*, 526 F.3d at 979.

## B.

In reviewing the district court's grant of summary
judgment on Gil's FTCA claims, we look to the substan-
tive law of the place where the malpractice occurred—
here, Wisconsin. 28 U.S.C. § 1346(b)(1). *See also Gil*, 381
F.3d at 658. Under Wisconsin law, medical malpractice
has the same ingredients as garden-variety negligence
claims: the plaintiff must prove that there was a breach
of a duty owed that results in an injury. *See Paul v. Skep*,
625 N.W.2d 860, 865 (Wis. 2001). In most cases, Wis-
consin law requires expert testimony to establish medical
negligence, although *res ipsa loquitur* can substitute for
expert testimony. *See Gil*, 381 F.3d at 659; *Christianson v.
Downs*, 279 N.W.2d 918, 921 (Wis. 1979); *Richards v.
Mendivil*, 584 N.W.2d 85, 89 n.5 (Wis. Ct. App. 1996). Thus
under Wisconsin law Gil must provide an expert opinion
that he was harmed because of Penaflor's and Reed's

negligence. Alternatively, he may show that an ordinary person could conclude from common experience that he could not have been injured had his medical providers exercised care. *Richards*, 548 N.W.2d at 89 n.5.[2]

The district court placed significant weight on Gil's failure to present expert witnesses to testify regarding whether Reed met the applicable standard of care. In Gil's first appeal we rejected this argument because "nothing in Wisconsin law prevents a plaintiff from relying on the defendant (such as Reed) or the defendant's agents . . . to supply evidence regarding the appropriate standard of care." *See Gil*, 381 F.3d at 659. On remand Dr. Kim and Dr. Harms summarily opined that Reed had met the standard of care, but other contradictory portions of their testimony might undermine these conclusory opinions. A rational jury could determine from their inconsistent testimony that Reed did *not* meet the standard of care. Moreover, a layman could decide, based on common experience aside from the

---

[2] In Gil's first appeal, we expressed doubt about whether Wisconsin's expertise rule should be applied in federal court where the Federal Rules of Evidence apply exclusively. *See Gil*, 381 F.3d at 659. The federal rule, unlike the Wisconsin one, holds that "no expert testimony is needed when the symptoms exhibited are not beyond a layperson's grasp." *Id.* In FTCA cases, state law applies to substantive questions and federal rules govern procedural matters. *See Arpin v. United States,* 521 F.3d 769, 776 (7th Cir. 2008). But whether Wisconsin's expert witness requirement is substantive or procedural, the difference between the Wisconsin rule and the federal rule is subtle, if there is a difference at all. In any event the disposition of this case does not hinge on the distinction. We therefore do not answer the question here.

doctors' testimony, that Penaflor's and Reed's treatment of Gil fell short of appropriate treatment. Gil is entitled to rely on the defendants' expert testimony as well as *res ipsa loquitor* under Wisconsin law with respect to *all* of his FTCA claims, including his miscellaneous claims for negligence. Because the factual record as it stands permits multiple interpretations, those inconsistencies cannot be resolved at the summary judgment phase.

But because the district court granted summary judgment on the FTCA clams for essentially the same flawed reasons as the Eighth Amendment claims, we need not belabor this point. Because Gil can overcome summary judgment on his Eighth Amendment claims, he *necessarily* can do so with respect to his less stringent FTCA claims. *See Del Raine v. Williford*, 32 F.3d 1024, 1031 (7th Cir. 1994) (explaining that "deliberate indifference describes a state of mind more blameworthy than negligence"). The district court's rationale for denying Gil's FTCA claims is wrong for the same reasons as its decision on his Eighth Amendment claims, and Gil must be allowed to go to trial on them as well.

### III.

We therefore VACATE the district court's grant of summary judgment in favor of the defendants and REMAND the case for trial on all claims.