In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-2756

MAURICE GIPSON,

*Plaintiff-Appellant*,

*v.*

UNITED STATES OF AMERICA,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Southern District of Indiana, Terre Haute Division.
No. 2:08-cv-137-LJM-JMS—**Larry J. McKinney**, *Judge*.

SUBMITTED NOVEMBER 30, 2010—DECIDED JANUARY 26, 2011

Before EASTERBROOK, *Chief Judge*, and POSNER and WOOD, *Circuit Judges*.

POSNER, *Circuit Judge*. Maurice Gipson, an inmate of a federal prison in Indiana, brought suit under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-80, complaining about complications of neck surgery because the prison's medical staff had disregarded a medical directive that he be told to stop taking blood thinners at least five days before the operation. The district court granted summary judgment in favor of the

government because Gipson had failed to submit a medical expert's opinion that in disregarding the directive the prison's medical staff had violated the applicable standard of care.

When a medical exam revealed that Gipson's complaints of pain, numbness, and tingling were caused by spinal disc disease, the prison's medical staff directed him to take a 325 milligram aspirin tablet every day. Eventually it was decided that he should have spinal fusion surgery, and it was scheduled to be performed at a hospital outside the prison on June 28, 2006. A health company that helps the prison staff arrange for medical treatments outside the prison twice notified the prison's medical staff in writing to "stop all blood thinners" for Gipson five days before the operation. That is standard procedure in advance of an operation. Aspirin is a significant blood thinner as well as a painkiller. (When taken as a blood thinner to reduce the risk of a heart attack or stroke, the standard dosage is 81 milligrams; the higher dosage that Gipson took was to relieve his pain but probably did not increase the thinning effect that an 81 mg. pill would have produced. Charles L. Campbell et al., "Aspirin Dose for the Prevention of Cardiovascular Disease," 297 *J. Am. Med. Ass'n* 2018, 2019-20 (2007).) But no one told Gipson to stop taking his daily aspirin, so he continued (or so at least he contends) taking it. And no one warned the hospital that he was taking a blood thinner. He suffered serious complications during his surgery as a result of internal bleeding, and there is evidence that the bleeding was caused by his aspirin usage and that the complications would in all likelihood

have been avoided, or at least have been less serious, had he stopped taking aspirin at least five days before the operation.

Since the mishap occurred in Indiana and Gipson's suit is under the Federal Tort Claims Act, an essential question is whether "the United States, if a private person, would be liable to [Gipson] in accordance with the law of the place where the act or omission occurred," 28 U.S.C. § 1346(b)(1), which is to say the law of Indiana. Indiana's common law of medical malpractice requires a plaintiff to present expert evidence of the applicable standard of medical care unless the defendant's conduct is "understandable without extensive technical input" or "so obviously substandard that one need not possess medical expertise to recognize the breach." *Narducci v. Tedrow*, 736 N.E.2d 1288, 1293 (Ind. App. 2000); see also *Harris v. Raymond*, 715 N.E.2d 388, 394 (Ind. 1999); *Culbertson v. Mernitz*, 602 N.E.2d 98, 104 (Ind. 1992); *Musser v. Gentiva Health Services*, 356 F.3d 751, 760 (7th Cir. 2004) (Indiana law).

Does the Indiana rule apply to this case? Cases such as *Arpin v. United States*, 521 F.3d 769, 776 (7th Cir. 2008); *Midwest Knitting Mills, Inc. v. United States*, 950 F.2d 1295, 1298 (7th Cir. 1991); *Pacheco v. United States*, 220 F.3d 1126, 1129 (9th Cir. 2000), and *Kazanoff v. United States*, 945 F.2d 32, 35 n. 3 (2d Cir. 1991), suggest that "law of the place" means "substantive" law in the same sense in which the word is used in deciding whether a federal court in a diversity case should apply local law or federal law. The considerations are different, however.

Concern with forum shopping—a concern that favors interpreting "substantive" broadly in diversity cases—is absent from cases under the Federal Tort Claims Act. Such cases can be brought only in federal court—the plaintiff has no choice of forum. Still, it would make no sense to interpret "law of the place" in which the alleged tort occurred to incorporate the state's entire procedural code—a move that would involve a whole-sale preemption of the Federal Rules of Civil Procedure, an aim not plausibly attributable to the Federal Tort Claims Act. But a state procedural rule that is in no wise inconsistent with any federal procedural rule, that is specific to a particular area of substantive law, and that is shaped by concerns with particular features of that area of law, should govern a tort case that is in federal court solely because of the defendant's identity, and specifically because of concern that a state court, in a contest between a resident and the federal government, might be strongly inclined to favor the resident. *Carter v. United States*, 982 F.2d 1141, 1143-44 (7th Cir. 1992); see *Lozada v. United States*, 974 F.2d 986, 988 (8th Cir. 1992); *Owen v. United States*, 935 F.2d 734, 736-37 (5th Cir. 1991). It would be odd as well as arbitrary if in a malpractice case filed under the Federal Tort Claims Act but identical to a malpractice case filed in an Indiana state court and governed by Indiana law, the plaintiff could ask the jury to speculate on the medical standard of care without the aid of expert testimony even if the standard was highly technical, or, equally, if the plaintiff would lose for want of an expert witness even if the breach of the standard of care would be obvious to the most modest, untrained intelligence.

Even if we insisted on a sharp line between substance and procedure in conforming federal tort claim actions to state suits, the Indiana rule would govern this case. "A substantive law is one motivated by a desire to influence conduct outside the litigation process, such as a desire to deter accidents, while a procedural law is one motivated by a desire to reduce the cost or increase the accuracy of the litigation process, regardless of the substantive basis of the particular litigation. If an ostensibly procedural rule of state law is confined to a particular substantive area of law, this suggests that it probably was motivated by substantive concerns and therefore should be applied by the federal court in a case governed by state law." *Gacek v. American Airlines, Inc.*, 614 F.3d 298, 302 (7th Cir. 2010) (citations omitted). We held in *Murrey v. United States*, 73 F.3d 1448, 1456 (7th Cir. 1996), that an Illinois rule similar to the Indiana rule at issue in this case was "'substantive' and thus part of the Illinois law of medical malpractice . . . because it is a rule limited to a particular area of law and motivated by concerns about the potential impact on primary behavior (here, medical treatment) of making it too easy for plaintiffs to win a particular type of case. (On the general principle, see *S.A. Healy Co. v. Milwaukee Metropolitan Sewerage District*, 60 F.3d 305, 310 (7th Cir. 1995), and for its application to state laws erecting procedural barriers to medical malpractice plaintiffs, see *Jones v. Griffith*, 870 F.2d 1363, 1368 (7th Cir. 1989), and *Hines v. Elkhart General Hospital*, 603 F.2d 646, 648 (7th Cir. 1979).)." If it's too easy for a plaintiff to prove malpractice, the incentive of physicians and hospitals to engage in costly defensive medicine will be increased.

That state law governing expert testimony in medical malpractice cases is applicable to malpractice suits under the Federal Tort Claims Act is an important principle. But probably nothing turns on its application to this case, since federal courts as a matter of federal common law also dispense with expert testimony in a medical malpractice case if no technical issues have to be resolved to determine whether there was malpractice. *Gil v. Reed*, 535 F.3d 551, 558 n. 2 (7th Cir. 2008); see also *Ledford v. Sullivan*, 105 F.3d 354, 359-60 (7th Cir. 1997); *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899-900 (6th Cir. 2004); cf. *Wong v. Belmontes*, 130 S. Ct. 383, 388 (2009); *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1240 (Fed. Cir. 2010). Were it disputed whether blood thinners should be stopped five days before an operation or one day or two weeks, expert testimony would be necessary to resolve the dispute because a layperson would be incapable of doing so without expert assistance. But it's conceded that five days was the minimum (for which, incidentally, there is support in the medical literature—see Ronan A. Cahill et al., "Duration of Increased Bleeding Tendency After Cessation of Aspirin Therapy," 200 *J. Am. College of Surgeons* 564, 572 (2005)), so that the only issue bearing on the standard of care is whether the prison's medical staff was required to tell Gipson that aspirin is a blood thinner and that he had to stop taking it at least five days before the operation or he might suffer serious internal bleeding during the operation. It doesn't require medical knowledge to answer "yes"—indisputably, the staff should have told him. *Gil v. Reed*, *supra*, was a similar case, and see also *Cox v. Paul*,

828 N.E.2d 907 (Ind. 2005); *Bader v. Johnson*, 732 N.E.2d 1212, 1218 (Ind. 2000) ("if Healthcare Providers did not provide the Johnsons with the result of the ultrasound, then Healthcare Providers breached its duty. It does not appear to us that expert testimony is required on this point"), and *Harris v. Raymond*, *supra*, 715 N.E.2d at 394-95. The "yes" is *so* obvious in this case that Gipson should have been able to move successfully for partial summary judgment, establishing a breach of the standard of care and leaving only issues of causation and damages for further proceedings.

Of course, if the distinct and also critical issue of causation turns on the answers to technical questions, as it might in this case since there can be other causes of internal bleeding during an operation besides a blood thinner, the need for expert evidence reoccurs. *Nasser v. St. Vincent Hospital & Health Services*, 926 N.E.2d 43, 48 (Ind. App. 2010); *Wallace v. McGlothan*, 606 F.3d 410, 420 (7th Cir. 2010) (Indiana law). But Gipson presented expert evidence of causation: the surgeon who operated on him opined that it was Gipson's failing to discontinue taking aspirin at least five days before the surgery that caused the complications. That opinion is contained in a medical report rather than a deposition or affidavit, but the report is admissible. Fed. R. Evid. 803(6); *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008); *United States v. Hall*, 419 F.3d 980, 987 (9th Cir. 2005); *Sosna v. Binnington*, 321 F.3d 742, 747 (8th Cir. 2003). The government argues that Gipson ran out of aspirin more than five days before his operation, but the evidence is conflicting and the conflict unresolved.

The judgment is reversed and the case remanded for further proceedings consistent with this opinion.