NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 23, 2016[*]
Decided June 27, 2016

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 15-2601

| | |
|---|---|
| ROBERT MARTIN, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Southern District of Indiana, Terre Haute Division. |
| *v.* | No. 2:13-cv-59-WTL-MJD |
| UNITED STATES OF AMERICA, *et al.*, *Defendants-Appellees*. | William T. Lawrence, *Judge*. |

**O R D E R**

Robert Martin, a federal inmate, brought this action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Martin contends that medical personnel—the clinical director at the prison in Terre Haute, the prison's health-services administrator, and the assistant health-services administrator—rendered deficient

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

treatment by failing to supervise an outside cardiologist who implanted Martin's defibrillator and by inadequately treating his other heart and gastrointestinal problems. The district court entered summary judgment for the defendants. The court concluded (1) that Martin could not prevail under the FTCA because he lacked evidence that the medical treatment he had received fell below the applicable standard of care and (2) that his *Bivens* claims were barred because they stemmed from the same subject matter as his failed FTCA claims. These conclusions are correct, so we affirm the district court's judgment.

We construe the record in Martin's favor and begin with the evidence regarding his heart condition. Martin suffered a heart attack in 1996 (at the age of 42), and since then he has been on medication to treat his cardiovascular problems. While incarcerated in Terre Haute in 2010, he experienced chest pain and difficulty breathing, and prison staff sent him to a local hospital for treatment. A diagnostic test revealed several complications: coronary artery disease, abnormal contractions of the left ventricle of Martin's heart, and ventricular tachycardia, a rapid heartbeat that "can develop as an early or late complication of a heart attack," *Ventricular tachycardia*, MEDLINEPLUS, https://www.nlm.nih.gov/medlineplus/ency/article/000187.htm (last updated June 7, 2016). (In this order we cite online medical reference aids to give the reader context for Martin's medical conditions and treatment.) The cardiologist who performed the test recommended that Martin consider "internal defibrillator implantation."

Martin saw another cardiologist at the hospital, Dr. Sameh Lamiy, whom the United States had hired as an independent contractor. Dr. Lamiy confirmed that an implantable cardioverter defibrillator was an appropriate treatment for Martin's ventricular tachycardia. This type of defibrillator is battery powered, placed under the skin, and connected to the heart with thin wires. *Implantable Cardioverter Defibrillator (ICD)*, AMERICAN HEART ASSOCIATION, http://www.heart.org/HEARTORG/Conditions/Arrhythmia/PreventionTreatmentofArrhythmia/Implantable-Cardioverter-Defibrillator-ICD_UCM_448478_Article.jsp#.V22vmHz2Z7d (last updated May 10, 2016). The defibrillator keeps track of the patient's heart rate and, when it detects that the heart is beating irregularly and too fast, delivers "an electric shock to restore a normal heartbeat." *Id.* Dr. Lamiy implanted the defibrillator in February 2010.

Six months after the surgery, Martin again saw Dr. Lamiy because the defibrillator sometimes shocked him even when his heart rate was not elevated. Dr. Lamiy recalibrated the defibrillator, noting that it may have been misfiring in part

because Martin had stopped taking his beta blockers. As best we can tell, the defibrillator stopped misfiring shortly after Dr. Lamiy recalibrated it. (Martin wrote in a grievance that the shocks stopped a month after the recalibration.) Nonetheless, around this time Martin began insisting that he did not need the defibrillator and asked to have it removed. He maintained that his heart was healthy and that the defibrillator misfired because of his abdominal pains and a stomach infection. Martin saw a private cardiologist in 2011 who recommended that the defibrillator *not* be removed.

Two expert witnesses (whose opinions the defendants submitted at summary judgment) also contradict Martin's contention that because of his stomach problems, his defibrillator should be removed. Dr. James VanTassel (a cardiologist) stated that "[t]he implantation of the [defibrillator was] appropriate"; that Martin's stomach infection had "no effect on [Martin's] cardiac condition" or the defibrillator; and that although the defibrillator could have been managed "a little tighter" or could be removed or turned off without threatening Martin's life, its use "was within the standard of care." Dr. Colin Howden (a gastroenterologist) also concluded that Martin's heart symptoms were not caused by his stomach infection.

Martin's other complaint about medical treatment concerns his stomach. His gastric problems began in 2010, and from then through 2013, he underwent numerous diagnostic tests and saw gastroenterologists several times for diagnosis and treatment. In October 2010 he underwent a biopsy that detected an H. pylori infection in his stomach. (H. pylori is a type of bacteria that may cause peptic ulcers, although most people with the infection "never get sick from it." *H. pylori infection*, MAYO CLINIC, http://www.mayoclinic.org/diseases-conditions/h-pylori/basics/definition/con-20030903 (last visited June 23, 2016).) Martin received a 14-day course of medications, but he continued experiencing stomach pain, reflux, and other gastrointestinal distress. Tests performed on Martin in 2011 did not detect H. pylori, but he received treatment for other gastrointestinal problems that had been diagnosed, such as his reflux. In February 2012 a biopsy again revealed that Martin had an H. pylori infection, and prison doctors prescribed another round of medications. Prison medical staff tested him again for H. pylori in October 2012 and March 2013; both tests were negative.

Dr. Howden (the gastroenterologist whose expert opinion the defendants submitted) opined that although Martin had experienced two "minor" lapses in the "overall management" of his H. pylori infection, he had not received substandard care. When Martin was diagnosed with H. pylori for the second time, prison doctors gave

him the same drugs that he received after his first diagnosis. This was inappropriate, Dr. Howden explained, because one of the medications "should not [have] be[en] used a second time since initial failure with this medicine probably means that the patient's *H. pylori* infection is resistant to it." Dr. Howden also stated that Martin should not have been taking a proton pump inhibitor when prison staff tested him for H. pylori in October 2012 and March 2013 because that drug "can reduce the sensitivity and reliability of the test[s]," both of which had been negative. But Dr. Howden concluded that, despite these shortcomings, Martin had received treatment within the standard of care.

In granting the defendants' motion for summary judgment, the district court first concluded that to the extent Martin was pursuing an FTCA claim based on Dr. Lamiy's actions, sovereign immunity barred the claim. The court reasoned that the doctor was a contractor, not an employee of the United States, and that the court therefore lacked subject-matter jurisdiction. Next, the court stated that the FTCA claims based on the actions of employees at the federal prison could not survive summary judgment because Martin had "provided no expert testimony to support [his] malpractice claims." Finally, the district court concluded that 28 U.S.C. § 2676 precluded Martin's *Bivens* claims because, like his failed FTCA claims, they were "based on the care Mr. Martin received for his heart and stomach problems." (Section 2676 provides that a judgment in an action under the FTCA "shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim." 28 U.S.C. § 2676; *see Simmons v. Himmelreich*, No. 15-109, 2016 WL 3128838, at *4 (U.S. June 6, 2016). Under § 2676 a judgment on an FTCA claim bars a *Bivens* claim that is "of the same subject matter"—meaning one that arises "out of the same actions, transactions, or occurrences"—even when a plaintiff brings the FTCA and *Bivens* claims in the same suit. *Manning v. United States*, 546 F.3d 430, 433–34 (7th Cir. 2008) (internal quotation marks omitted).)

On appeal Martin does not challenge the district court's conclusion that the United States is not liable under the FTCA for the actions of Dr. Lamiy because he is a contractor, not a government employee. We pause only to note that although the district court was correct that the FTCA generally does not waive the sovereign immunity of the United States for torts committed by contractors, *see* 28 U.S.C. §§ 1346(b), 2671; *United States v. Orleans*, 425 U.S. 807, 813–14 (1976), the court was mistaken to state that sovereign immunity deprived the court of jurisdiction: Sovereign immunity is an affirmative defense, not a jurisdictional doctrine, *see Sung Park v. Ind. Univ. Sch. of*

*Dentistry*, 692 F.3d 828, 830 (7th Cir. 2012); *Wis. Valley Improvement Co. v. United States*, 569 F.3d 331, 333 (7th Cir. 2009). But this error does not affect the outcome of this case, so we proceed to the merits.

Martin first argues that he has a triable FTCA claim against the United States because, he maintains, a jury reasonably could find that the prison's medical staff failed to "properly oversee the service of Dr. Lamiy" outside the prison. We reject this argument. Indiana's law of medical malpractice applies to Martin's FTCA claims. *See* 28 U.S.C. § 1346(b)(1); *Gipson v. United States*, 631 F.3d 448, 450–51 (7th Cir. 2011). Martin cites—and we have found—no Indiana case law holding that medical staff who have referred a matter to an outside, licensed specialist have a duty to second-guess that specialist's clinical decisions. To the contrary, had the prison's staff disregarded Dr. Lamiy's diagnosis and interfered with his prescribed treatment of Martin, they could have exposed themselves to a claim of deliberate indifference. *See Perez v. Fenoglio*, 792 F.3d 768, 778 (7th Cir. 2015) ("Allegations that a prison official refused to follow the advice of a medical specialist for a non-medical reason may at times constitute deliberate indifference.").

Pursuing his FTCA claim from another angle, Martin next argues that a jury could reasonably find that the staff had negligently ignored his heart condition *after* Dr. Lamiy implanted the defibrillator. He maintains that—based on Dr. VanTassel's statement that the defibrillator could be removed or turned off without threatening Martin's life—he "did not need" the defibrillator, so the staff should have ordered it removed. But Martin furnished no expert evidence, as he must, to contradict the conclusions of the defendant's expert witnesses, who opined that the decision to keep the defibrillator implanted and active reflected acceptable medical care. *See Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014) (explaining that once the party moving for summary judgment "inform[s] the district court why a trial is not necessary," the nonmovant must produce evidence "sufficient to establish the existence of an element essential to that party's case" (internal quotation marks omitted)). Such rebuttal expert evidence was necessary because the defendants' conduct is not "understandable without extensive technical input or so obviously substandard that one need not possess medical expertise to recognize the breach." *Gipson*, 631 F.3d at 451 (internal quotation marks omitted). And contrary to Martin's assertions, Dr. VanTassel does not suggest that treating Martin's heart condition with the defibrillator fell below the standard of care. Dr. VanTassel explains in his report that sound medical criteria *support* the decision to implant, retain, and use the defibrillator. His statement that the

defibrillator may be safely turned off suggests that doctors may reasonably provide alternative treatments for Martin's condition; it does not imply that the treatment Martin received was inappropriate.

Finally, Martin argues that the district court mistakenly concluded that his *Bivens* claims are "of the same subject matter" as his FTCA claims and thus barred by 28 U.S.C. § 2676. Martin asserts that his claims are not of the same subject matter because, he says, his FTCA claims concern solely the implantation and management of his defibrillator while his *Bivens* claims relate to the other treatments for his heart condition as well as the treatment of his H. pylori infection.

For several reasons, the district court correctly entered judgment against Martin on the *Bivens* claims. First, in his filings in the district court, Martin did not distinguish between the subject matter that is the basis of his FTCA claims and the conduct that undergirds his *Bivens* claim. Even in his appellate brief, he muddles any supposed distinction: When discussing his FTCA claims, Martin refers to the prison officials' treatment of his heart condition *and* his H. pylori infection; he then describes his *Bivens* claims as based on the defendants' "acts or omissions in treating his [c]ontinuing heart palpitations, shocks from the [defibrillator], and his gastrointestinal problem that has been proven to be the re-occurrence of an H-pylori infection" (internal quotation marks omitted).

But even if we assume that Martin's FTCA and *Bivens* claims arise from different conduct, the *Bivens* claims fail anyway. Martin supplied no evidence that the members of the prison's medical staff whom he sued were personally involved in the treatment that he objects to. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). Beyond that Martin asserts only that he preferred a different treatment; he provides no evidence that the treatment he did receive violated the constitution. To the contrary, as we have already noted, the record shows that his treatment with a defibrillator was reasonable and that even though he experienced two minor lapses in the treatment of his H. pylori infection, that treatment was still acceptable. *See Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) ("Disagreement between a prisoner and his doctor . . . about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation.").

AFFIRMED.