NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted January 5, 2021[*]
Decided January 7, 2021

**Before**

DIANE S. SYKES, *Chief Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 20-1139

| | |
|---|---|
| SAMTERIOUS GORDON, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Western District of Wisconsin. |
| *v.* | No. 3:18-cv-00176-wmc |
| DREW CROSS, et al., *Defendants-Appellees.* | William M. Conley, *Judge.* |

**O R D E R**

After complaining to a nurse about pain from his tooth, Samterious Gordon suffered dental complications that required a prison dentist to extract it a month later. He sued several prison officials for violating his rights under the Eighth Amendment and state law by not immediately responding to his request for dental treatment. The district court permitted him to proceed to trial on claims against the nurse and two correctional officers, and a jury later found against him. Gordon appeals, challenging several of the district court's pretrial decisions and asserting that the jury's verdict is against the weight of the evidence. We affirm.

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

Before Gordon was transferred to New Lisbon Correctional Institution in Wisconsin, a dentist advised him that one of his upper-right teeth needed either to be filled or extracted. He did not submit any follow-up requests for dental care until two years later, however, when he felt pain in the tooth, developed headaches, and could not eat or sleep. On January 19, 2018, he submitted a request asking to be seen by a dentist at New Lisbon "as soon as possible" because of the pain. He traced the origin of his pain to "biting a penny" during his pretrial detention.

Lynn Dobbert, a nurse at the health-services unit, reviewed Gordon's request a day later. Without evaluating Gordon or his dental records, she determined that his request was not urgent and forwarded it to the prison's dentist. The dentist, who worked at the prison three days a week, agreed that the request was not urgent and placed Gordon on a waitlist that ran twelve months long. Gordon saw a primary-care physician for other ailments a few days later but did not mention tooth pain.

On February 13, part of Gordon's tooth broke off when he bit into a piece of cake. He says he showed the fragment to three duty officers—including Officers Joseph Fraundorf and Drew Cross—who refused to contact dental or health services on his behalf. According to Gordon, those officers told him to fill out a health-services request and joked that he shouldn't "put the tooth under his pillow" because "there is no tooth fairy in jail." That evening Gordon submitted another request for dental care, asking for pain medication and explaining that his tooth had fallen out.

Nurse Dobbert also handled this request. Without talking to Gordon, she again forwarded the request to the dentist who, unbeknownst to her, was off work and not scheduled to return for another six days. When the dentist eventually returned on February 19 and saw the request, he classified it as urgent and scheduled a same-day appointment with Gordon to extract the tooth. Gordon later filed an inmate complaint against the dentist, who responded that he believed he had provided adequate care but thought Gordon "should have been assessed and seen by nursing for his pain" while he was on the dental-services waitlist.

Gordon then sued Nurse Dobbert, Officers Fraundorf and Cross, the dentist, and several other prison staff for deliberate indifference, *see* 42 U.S.C. § 1983, and negligence under Wisconsin law. He twice moved for attorney representation, *see* 28 U.S.C. § 1915(e), both after filing his complaint and during discovery, asserting that he needed help gathering evidence and finding an expert to explain his dental records. The district court denied both requests. Gordon's filings were coherent, the court reasoned, and it was "too early" to tell whether expert testimony would be needed. His claims appeared

to be straightforward and, in those early stages of litigation, he seemed capable of explaining to the court what had happened to him.

After granting summary judgment for the defendants on several claims, the district court permitted Gordon to proceed to trial on his claims against Nurse Dobbert and the two officers. It then issued a detailed pretrial order, instructing Gordon on what he needed to prove at trial and how to conduct himself in front of the jury. Gordon renewed his request for counsel, and the court again denied it on grounds that his claims appeared straightforward. As the court explained, he needed only "to tell the jury his version of events." The quality of his submissions reflected that he could understand the pretrial order and was capable of presenting evidence to the jury and making coherent, persuasive arguments on his own in the courtroom.

At a final pretrial conference, the court made a series of rulings about the evidence Gordon would be allowed to use, and the case then proceeded to trial. Gordon delivered opening and closing statements and introduced several exhibits, including prison-policy statements and actual remnants of his broken tooth. He described his requests for dental care and his interactions with the guards after his tooth broke, though he conceded that he did not complain about the tooth outside of those interactions. His cellmate corroborated his testimony that guards jeered at him on the evening his tooth broke. Nurse Dobbert also testified and admitted that, upon receiving his requests, she did not review Gordon's dental records or offer him pain medication—measures that were apparently required by the prison's triage protocol. She explained that she did not regard Gordon's requests as urgent because he did not mention any blood or say that his tooth had been knocked out in a fight. She also did not know that the dentist was off work and would not see Gordon's last request for several days. Officers Cross and Fraundorf, for their part, denied interacting with Gordon or ever joking about his tooth. The jury returned a verdict for the defendants.

On appeal, Gordon challenges three of the district court's pretrial evidentiary rulings, which we review for abuse of discretion. *See Thomas v. Cook Cty. Sheriff's Dep't,* 604 F.3d 293, 307 (7th Cir. 2010). He points, first, to the court's ruling that limited the manner in which he could refer to his January 19 request for dental care. The court ruled that he could not use it to argue that Nurse Dobbert's response was inadequate because that would be beyond the scope of his claims at trial—which the court had narrowed to only the actions by the defendants in the aftermath of his tooth breaking on February 13. Gordon argues that the court's ruling prevented him from showing that Nurse Dobbert's earlier response contributed to his tooth's deterioration.

The district court permissibly limited the use of Gordon's January 19 request for dental care to avoid confusing the jury. *See* FED. R. EVID. 403; *Henderson v. Wilkie,* 966 F.3d 530, 538 (7th Cir. 2020). As the court explained, Nurse Dobbert's response to that request did not bear on the particular claim on for trial—the appropriateness of her actions after a fragment of Gordon's tooth fell out. We note, too, that the court had reminded Gordon at the final pretrial conference that he could refer to the January 19 request to provide context for his February 13 request for dental care.

The second pretrial ruling contested by Gordon relates to the court's decision to exclude any evidence about the dentist's response to his inmate complaint. Gordon argues that the dentist's response, which appears to fault nursing staff for not independently evaluating his pain, was necessary to establish Nurse Dobbert's duty of care. But this response was an attestation on an ultimate issue by a witness whom neither party sought to have qualified as an expert or called at trial, so the court's decision to exclude it was justified. *See* FED R. EVID. 702, 801; *Pittman by and through Hamilton v. Cty. of Madison,* 970 F.3d 823, 829–30 (7th Cir. 2020). In any event, Nurse Dobbert admitted at trial that she had not followed the prison's triage protocol, so we cannot see how the exclusion of this evidence could have substantially affected the verdict. *See Jordan v. Binns,* 712 F.3d 1123, 1139 (7th Cir. 2013).

Third, Gordon contends that the district court should have sanctioned the defendants for withholding and destroying security footage of his prison tier. *See* FED. R. CIV. P. 37(e). This footage, he says, would have rebutted testimony by Officers Cross and Fraundorf that they did not interact with him after his tooth fell out, so at the very least a curative instruction about that footage was required. But he did not raise this issue properly in the district court. Though he moved to compel the production of that footage, the court denied his motion because he did not first attempt to confer about the footage with defense counsel. Gordon did not revive his concerns until the day of trial, at which point the district court rejected them as untimely. We cannot review arguments that were not properly raised in the district court. *See Lewis v. McLean,* 941 F.3d 886, 892 (7th Cir. 2019). Regardless, the record does not support an inference that the defendants destroyed the footage in bad faith. *See id.; cf. Ramirez v. T&H Lemont, Inc.,* 845 F.3d 772, 781–82 (7th Cir. 2016).

Next, Gordon argues that the district court should have recruited an expert for him because Wisconsin law requires expert testimony at trial to prove medical malpractice claims. *See, e.g., Carney-Hayes v. Nw. Wis. Home Care, Inc.,* 284 Wis. 2d 56, 81 (2005). But he never asked the court to recruit an expert in the first place—he asked only

for a lawyer to help him find one. True, under Federal Rule of Evidence 706(a), the court could have appointed a neutral expert on its own. But the court appropriately told Gordon (several times) that he had not shown the need for expert testimony, since none of his claims involved a misdiagnosis by medical staff, and the defendants did not contest that his tooth needed treatment. *See Gipson v. United States*, 631 F.3d 448, 452 (7th Cir. 2011).

Gordon also challenges the district court's conclusion not to recruit counsel for him. He asserts that the court applied the wrong standard in considering his requests and ignored his limited schooling (twelfth grade). But he never expressed misgivings to the court about his education level. And the court, before denying each of his three requests for counsel, properly considered the nature of his claims, their difficulty, and his ability to litigate them himself. *See Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014) (citing *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (en banc)). The court also was mindful of the heightened challenges facing Gordon as the litigation entered its later stages. *See Walker v. Price*, 900 F.3d 933, 938–39 (7th Cir. 2018). After summary judgment, the court issued a detailed pretrial order informing Gordon what he needed to prove at trial and the procedures he had to follow in presenting his case. With regard to Gordon's final request for counsel (filed on the eve of trial), the court appropriately explained that it believed he could follow its instructions and present his case to the jury on his own. Our own review of the record reveals that, though he did not achieve a favorable outcome, he presented his claims quite capably.

Finally, Gordon contends that the jury's verdict is the against the weight of the evidence. He failed, however, to preserve any challenge to the sufficiency of the evidence. He did not move for a judgment as a matter of law at the close of evidence or after the jury's verdict, nor did he request a new trial. FED. R. CIV. P. 50(b), 59; *Unitherm Food Sys., Inc., v. Swift-Eckrich, Inc.*, 546 U.S. 394, 405 (2006); *Willis v. Lepine*, 687 F.3d 826, 836 (7th Cir. 2012). In any event, we could not conclude that the verdict was unjust or "conscience-shocking." *Rainey v. Taylor*, 941 F.3d 243, 252 (7th Cir. 2019). The jury reasonably could have decided the case either way, having heard Nurse Dobbert's reasons for not treating his requests as urgent, as well as testimony by Officers Cross and Fraundorf that squarely contradicted Gordon's own account of their interactions with him on the evening his tooth fell out.

AFFIRMED