In the

# United States Court of Appeals
## For the Seventh Circuit

No. 20-3534

BILLIE VARGAS LOVE, Administrator of the Estate of Louis Vargas,

*Plaintiff-Appellant*,

*v.*

UNITED STATES OF AMERICA,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:16-CV-11012 — **Edmond E. Chang**, *Judge*.

ARGUED OCTOBER 1, 2021 — DECIDED NOVEMBER 4, 2021

Before EASTERBROOK, MANION, and WOOD, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. Louis Vargas received extensive medical care from the Veterans Administration. He argues in this suit under the Federal Tort Claims Act, 28 U.S.C. §§ 2671–80, that a nurse employed by the VA was negligent in failing to order additional tests after receiving the results of a urinalysis in October 2015. More testing, Vargas contended, would have revealed that he suffered from a urinary tract

infection. He continues: Failure to diagnose that infection led to a heart attack, which led to extended hospitalization, which led to pain and inflammation caused by the catheters inserted into his hands during this stretch in the hospital.

The district court held a bench trial and ruled against Vargas on all of his principal contentions. *Vargas v. United States*, 430 F. Supp. 3d 500 (N.D. Ill. 2019), motion for a new trial denied, 2020 U.S. Dist. LEXIS 220349 (Nov. 24, 2020). The judge found that further testing to identify a potential urinary tract infection was not required by the appropriate standard of care, given the judge's finding that no other indication of infection was present. The results that Vargas contended implied a need to search for an infection were consistent with benign prostate hypertrophy (an enlarged prostate), for which Vargas had been treated since 2004.

The judge added that a urinary tract infection did not cause Vargas's heart attack, nor did the hospitalization after the heart attack cause his reported pain and swelling. Those medical issues stemmed from independent causes, the judge concluded. In sum, Vargas lost for multiple reasons.

On appeal Vargas contests some of the important factual findings, but none is clearly erroneous. (Vargas died after the district court's opinion was issued, and the appeal is being prosecuted by the administrator of his estate. We refer to the appellant as "Vargas" for clarity.)

Vargas's principal appellate arguments concern expert evidence. The district judge permitted the United States to adduce testimony from Christopher Coogan, a board-certified urologist, whose testimony the district judge credited. The judge prevented Vargas from objecting to Coogan's testimony

because Vargas did not meet a deadline for all "*Daubert* motions". Vargas now tells us that his motion to prohibit Coogan from testifying is unrelated to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and rests instead on a rule of Illinois law that a medical professional must testify within the scope of his or her specialty. This means, Vargas insists, that his motion to block Coogan from testifying was not subject to any deadline. The decision not to follow up on the urine test was made by a nurse practitioner, and Vargas maintains that as a matter of Illinois law only a nurse practitioner may testify about whether that decision met the standard of care.

The FTCA makes the United States liable for torts of its employees "in the same manner and to the same extent as a private individual under like circumstances". 28 U.S.C. §2674 ¶1. This is the language on which Vargas relies for the proposition that any testimony inadmissible in state court must be inadmissible in federal court too and that an objection to an expert's testimony must be unrelated to *Daubert*. The problem with this line of argument is that it ignores the Federal Rules of Evidence, which for the most part are statutes. They were enacted in 1974, and amendments to these rules prevail over older statutes per the supersession clause in the Rules Enabling Act. See 28 U.S.C. §2072(b); *Henderson v. United States*, 517 U.S. 654 (1996). And the Rules of Evidence are not ambiguous. They apply to all proceedings in federal court, see Fed. R. Evid. 101(a), with a few limits specified in Rule 1101. The federal rules require the use of state law on the topic of privileges when state law supplies the rule of decision. Rule 501 ¶2. State law supplies the rule of decision under the FTCA, so Illinois law would govern privileges—but Coogan's ability to testify has nothing to do with privilege. It concerns expertise, the subject of Fed. R. Evid. 702.

Rule 702 applies in every federal suit. It was amended after *Daubert* and altered that decision's approach slightly, so the district court's reference to *Daubert* was unfortunate—as the judge himself recognized when denying the motion for a new trial. But the equation of *Daubert* with the current version of Rule 702 is sufficiently widespread that any lawyer practicing in federal court must know that the district court's reference to "*Daubert* motions" meant all motions about the admissibility of expert evidence. And Rule 702 is not the only source of authority to control expert evidence. Rule 26(b)(4) of the Federal Rules of Civil Procedure specifies when and how expert evidence must be produced. Rule 26, like Rule 702, applies in all federal cases. The fact that state substantive law supplies the rule of decision does not bring state procedural law into federal litigation. See also, e.g., *Mayer v. Gary Partners & Co.*, 29 F.3d 330 (7th Cir. 1994).

We recognize that a state rule cast in procedural form may have a substantive function. One notorious example is the rule, adopted in many states, that the defendant in a tort suit arising from an automobile accident cannot show that the injured party failed to wear a seat belt. This rule, though stated as one about evidence, implements the substantive norm that failure to use a particular self-protective device cannot be asserted as a ground of contributory negligence. The seatbelt rule therefore applies in federal litigation. See *Barron v. Ford Motor Co.*, 965 F.2d 195 (7th Cir. 1992). Cf. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415 (1996). Whether at least some expert evidence is essential to a claim also may be understood as substantive. Cf. *Young v. United States,* 942 F.3d 349 (7th Cir. 2019) (even though a physician's report may be essential as a matter of state substantive law, state procedures about when and how it must be produced do not apply in federal court).

How to prove the standard of care in a malpractice suit is a matter of evidence; we do not see in Illinois law any disguised substantive rule on the subject. The substantive norm is that medical care conforming with professional standards is not actionable. Which experts may testify about what topics is a matter of competence, which in a federal forum comes within the scope of the Federal Rules of Evidence.

Vargas relies on *Gipson v. United States*, 631 F.3d 448, 451 (7th Cir. 2011), which remarked that, because all FTCA cases are tried in federal court, using state evidentiary rules would avoid outcomes different from those that would obtain in state court. That may well be true. But *Gipson* did not hold that state rules *do* apply; indeed, the opinion added that "nothing turns on" (*id.* at 452) its ruminations about evidence. *Gipson* did not discuss the Federal Rules of Evidence or the holdings of the Supreme Court that the federal rules prevail over any inconsistent state rules, no matter how much the difference between state and federal rules affects the outcome. See, e.g., *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010); *Walker v. Armco Steel Co.*, 446 U.S. 740 (1980). All it held is that, when expert testimony is essential to a substantive decision, that is true in federal as well as state court. Today's appeal requires us to choose between dicta in *Gipson* and holdings of the Supreme Court; that contest can have only one winner. Federal rules govern the admissibility of expert evidence in suits under the FTCA.

Coogan's testimony was admissible under Rule 702. Vargas does not argue otherwise. The district judge therefore was entitled to consider Coogan's view that the applicable standard of care did not require follow-up testing in October 2015 to look for a urinary tract infection.

And, for what it is worth, we doubt that Illinois would proceed otherwise in its own courts. The doctrine on which Vargas relies—one under which medical professionals must stay within the scope of their expertise, see, e.g., *Sullivan v. Edward Hospital,* 209 Ill. 2d 100, 113–15 (2004)—is designed to ensure that judges and juries rely on properly supported testimony. So, for example, a nurse practitioner could not testify in Illinois to the standard of care by a urologist; medical doctors have greater knowledge than nurses on matters within their specialties. Federal courts would reach the same conclusion under Rule 702. But the doctrine need not work in reverse. Coogan testified that even a board-certified urologist would not have seen anything in the October 2015 test result calling for further lab work. If that is a correct statement of the medical standard of care at the highest level—and the district judge found that it is—then a nurse practitioner's identical decision cannot be negligent. Illinois does not hold nurses to the higher standard of specialists; but when the standard of specialists has been met, a nurse cannot be blamed for a bad outcome.

None of Vargas's remaining arguments requires discussion.

AFFIRMED