In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2885

Robert D. Speedy,

Plaintiff-Appellant,

v.

Rexnord Corporation,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Indiana,
Indianapolis Division.
No. IP-98-0687-C-T/G--John Daniel Tinder,
Judge.

Argued February 15, 2001--Decided March 16,
2001

   Before Flaum, Chief Judge, and Bauer and
Rovner, Circuit Judges.

   Flaum, Chief Judge.  Robert D. Speedy,
acting as a union steward, accompanied
two female employees of the Rexnord
Corporation ("Rexnord") to file sexual
discrimination complaints against a
Rexnord supervisor. Within a month of his
action, Speedy was suspended for
excessive absenteeism, and eventually
terminated. Speedy filed suit in the
district court alleging that he had been
discharged in retaliation for his
participation in activities protected
under Title VII. The case proceeded to
trial, where a jury determined that while
Rexnord had retaliated against Speedy for
accompanying the employees to file their
complaints, Rexnord had sufficiently
proved an affirmative defense by showing
that it would have fired Speedy for
attendance reasons, regardless of any
retaliatory motivation that the company
may have harbored. Speedy filed a motion
for judgment as a matter of law, arguing
that there was insufficient evidence to
have allowed Rexnord's affirmative

defense to be presented to the jury. The district court denied Speedy's motion, and he now appeals. In addition to challenging the district court's conclusion regarding Speedy's motion for judgment as a matter of law, Speedy also contends that the district court erroneously excluded evidence that Speedy had engaged in other protected "opposition" conduct, and incorrectly refused to award Speedy attorney's fees as a prevailing party. For the reasons stated herein, we affirm the decision of the district court.

I.  BACKGROUND

In January of 1993, Rexnord, a manufacturer of roller and drive chain, retained Robert Speedy for a general production position. Speedy, who at all times relevant to this matter labored under the direct supervision of Don Tipmore, was elected union steward for his production department in July of 1996. In that capacity, it was Speedy's obligation to relay the complaints of employees to their supervisors or other management officials. Acting as a union steward, on September 4, 1996, Speedy accompanied two of Rexnord's female employees--Darcia Sessions and Gail Marlin--to the Indianapolis office of the Equal Employment Opportunity Commission ("EEOC") in order to file charges of sexual discrimination against Rexnord. Both Sessions' and Marlin's complaints specifically named Tipmore as the wrongdoer. Beside accompanying the pair, Speedy also provided a statement to the EEOC in support of Marlin's charge.

Upon his return to Rexnord, Speedy contends that he became the target of a "campaign of retaliation," orchestrated by Tipmore. This campaign, according to Speedy, centered around Rexnord's attendance requirements and Speedy's repeated transgressions of those demands. Rexnord's attendance policy, known as Rule 20, is a progressive disciplinary program. Under the policy, an employee is subject to discipline if he or she is absent or tardy three times within a thirty day calendar period (the "three in thirty" rule). According to Rule 20, the first time an employee violates the three in thirty rule, he or she receives a documented verbal warning. For the second transgression, the employee receives a

written warning; for the third, a suspension; and for the fourth, termination. Under the collective bargaining agreement, certain absences, such as those for jury duty, those for funeral leave, and those covered under the Family and Medical Leave Act are excused and are not counted against the employee.

Speedy's first contravention of the three in thirty rule occurred in July and August of 1995, when he was absent three times, and tardy twice. As per Rule 20, Speedy received a documented verbal warning. Following the warning, Speedy abided by the policy until July and August of 1996, when he was again absent three times and tardy twice. As a result, Tipmore reprimanded Speedy with a written warning on August 13, and informed Speedy that any further violation could result in a three-day suspension. Speedy received that suspension in October of 1996--the month following his visit to the EEOC--when Speedy violated the three in thirty rule for a third time. Along with the three-day suspension, Speedy received a second verbal warning, apprising him that any additional policy infraction could result in his termination. While it was within Tipmore's discretion to waive the suspension days, Tipmore, citing Speedy's refusal to commit towards an improvement in attendance, refused to do so. According to Speedy, upon his return from suspension, Tipmore informed him that "his days were numbered," and that Tipmore would have his job. Thereafter, on December 12, 1996, Speedy returned to the EEOC office to file his own charge, alleging that Tipmore was retaliating against him for accompanying Sessions and Marlin to file their EEOC complaints.

Less than two months after being suspended, Speedy once more breached the three in thirty rule. On January 28, 1997, Tipmore placed Speedy on terminal suspension, the company's final disciplinary step prior to termination. As was practice when an employee was put on terminal suspension, Rexnord and Union officials met to discuss the matter. At the meeting, which was attended by, among others, Speedy, Tipmore, and the director of employee relations, Mark Sabatino, Speedy refused to make any commitment to improve his attendance. According to

Speedy, Sabatino agreed to give Speedy "another chance" if Speedy agreed to drop his pending EEOC complaint. While there is no disagreement that at some point during the meeting an agitated Speedy told Sabatino to "just fire [him]," the parties do present alternative suggestions as to the impetus behind the statement. On the one hand, Speedy argues that his request to be terminated was in response to Sabatino's solicitation that Speedy withdraw his EEOC complaint. However, Rexnord counters that Speedy's statement was not prompted by any specific comment by Sabatino, but rather was a reflection of the attitude Speedy had adopted towards the company and its attendance requirements. Regardless of Speedy's motivations, Sabatino acquiesced to Speedy's request, informing the union on January 30, 1997, that Speedy's terminal suspension would be converted to a discharge.

Speedy filed suit in the District Court for the Southern District of Indiana, alleging that he was discharged from employment in retaliation for having engaged in conduct protected by Title VII, in violation of 42 U.S.C. sec. 2000e-3(a). The case was tried before a jury, which on January 26, 1997, returned a special verdict. The jury unanimously agreed that Speedy had proven by a preponderance of the evidence that Rexnord had terminated him in retaliation for having filed and assisted in the filing of charges with the EEOC. However, the jury also found that Rexnord had proven by a preponderance of the evidence that the company would have terminated Speedy because of attendance, regardless of his engagement in protected activities. After the verdict, Speedy filed a motion for judgment as a matter of law, arguing that Rexnord had failed to present legally sufficient evidence to allow its affirmative defense--that Rexnord would have fired Speedy regardless of any retaliatory motive--to go to the jury. The district court denied that motion and Speedy timely appealed. In addition to challenging the district court's decision to deny his renewed motion for judgment as a matter of law, Speedy raises two additional contentions on appeal. First, Speedy claims that the district court erred in precluding evidence that Speedy engaged in other acts of opposition conduct protected by

Title VII. Second, Speedy also argues that the district court erred in denying his petition for attorney's fees as a prevailing party in a retaliation case.

## II. DISCUSSION

### A. Judgment as a Matter of Law on Retaliation Claim

Speedy's primary contention on appeal is that there was insufficient evidence to support Rexnord's "mixed-motive" affirmative defense, and that thus the district court erred in not granting Speedy judgment as a matter of law on the issue. We review a trial court's grant or denial of judgment as a matter of law under Fed.R.Civ.P. 50 de novo. See Mathur v. Board of Trustees of S. Ill. Univ., 207 F.3d 938, 941 (7th Cir. 2000). Using the same standard as that applied by the district court, we limit our inquiry to whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in the light most favorable to the party against whom the motion is directed. See Emmel v. Coca-Cola Bottling Co. of Chicago, 95 F.3d 627, 629-30 (7th Cir. 1996). In so doing, "this court may not step in and substitute its view of the contested evidence for the jury's." Id. at 634.

In Price Waterhouse v. Hopkins, the Supreme Court established the "mixed-motive" affirmative defense when it held that "when a plaintiff in a Title VII case proves that her [protected conduct] played a motivating part in an employment decision, the defendant may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the plaintiff's [protected conduct] into account." 490 U.S. 228, 258 (1989). In response to the decision, Congress enacted the Civil Rights Act of 1991 "in part to overrule the Supreme Court's decision in Price Waterhouse." McNutt v. Board of Trustees of the Univ. of Ill., 141 F.3d 706, 707 (7th Cir. 1998). The Act rolled back the Price Waterhouse holding in certain types of discrimination cases by providing that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating

factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. sec. 2000e-2(m). However, as we noted in McNutt, absent from that provision is a reference to retaliation claims. See McNutt, 141 F.3d at 707. Thus, we determined that within the limited context of retaliation cases, the rule of Price Waterhouse was still applicable, and a defendant could therefore continue to avoid liability by proving by a preponderance of the evidence that it would have made the same employment decision even if it had not taken plaintiff's protected activity into account. See id. at 707-09.

The continued viability of the mixed-motive affirmative defense in the arena of retaliation cases being uncontested, we now turn to examine the evidence required to support the defense. In Price Waterhouse, the Court remarked that "[a]s to the employer's proof, in most cases, the employer should be able to present some objective evidence as to its probable decision in the absence of an impermissible motive/1." Price Waterhouse, 490 U.S. at 252. The Court recognized that proving that the same decision would have been justified absent a retaliatory motive is not the same as proving the same decision would have been made absent the motive. Id. Thus, the Court concluded that an employer could not prevail in a mixed-motive case by offering a legitimate reason for its decision, if that legitimate reason did not sufficiently motivate the employer at the time of the decision. "The employer instead must show that its legitimate reason, standing alone, would have induced it to make the same decision." Id.

Speedy is quick to point out that the only evidence that Rexnord presented in support of its mixed-motive defense was Mark Sabatino's "naked allegation that he would have made the same decision to fire Speedy based on Speedy's attendance." Speedy suggests that such a conclusory, self-serving statement is insufficient evidence to allow a jury to find that Rexnord would have fired Speedy absent his engagement in protected activities. Rather, Speedy claims that in order to prevail on its affirmative defense, Rexnord should have been required to

present evidence of similarly-situated individuals who had not engaged in protected activity who were treated similarly to Speedy; namely, terminated. Speedy posits that because Rexnord has not come forth with evidence of employees with similar attendance problems who had not engaged in protected conduct and yet were terminated, the district court should have granted his motion for judgment as a matter of law.

We disagree with Speedy's proposition that comparative evidence is the type of objective proof required for a jury to accept a mixed-motive defense. The Supreme Court in Price Waterhouse did not specify that such evidence, the type employed in McDonnell-Douglas analyses, is indispensable and dispositive in mixed-motive cases. Speedy has not presented any case law, from this Circuit or any other, that supports his position. However, we do note that the Eighth Circuit, when faced with a similar argument, rejected the contention that objective evidence for mixed-motive purposes requires proof that similarly-situated individuals, not the target of a Title VII violation, were treated similarly. In Foster v. University of Arkansas, the court stated that "[s]uch evidence would have been appropriate and helpful, but its absence does not mean that we must overturn the jury's verdict. We must affirm unless reasonable persons could not differ as to the conclusions to be drawn from the evidence, when viewed in the light most favorable to the prevailing party." 938 F.2d 111, 114 (8th Cir. 1991). We agree with the Eighth Circuit's approach, and find that comparative evidence, though certainly helpful, is not required under the Price Waterhouse standard.

Though Rexnord was not required to provide comparative evidence, that does not resolve whether the evidence it presented was sufficient to allow the mixed-motive defense to proceed to the jury. We agree with Speedy that, based on the plurality's note in Price Waterhouse, Sabatino's lone statement that he would have fired Speedy solely for absenteeism is not sufficient objective proof for a mixed-motive defense. See Price Waterhouse, 490 U.S. at 252 n.14. However, we believe that Sabatino's statement, when taken in conjunction with

the other evidence Rexnord provided, was sufficient to allow a rational jury to reach the conclusion that it did. See Mathur, 207 F.3d at 941.

In support of its mixed-motive claim, Rexnord presented undisputed evidence that it had a progressive discipline attendance policy in place for many years./2 The final step of that policy was terminal suspension, which after a meeting with a union representative could result in termination. Furthermore, Rexnord provides, and Speedy does notcontest, that his attendance record warranted discharge pursuant to Rexnord's policy. The company presented a list of fifty-five employees who had been disciplined for attendance problems, in order to show that Rule 20 was actually enforced. Furthermore, Rexnord presented evidence of four employees who had reached the terminal suspension stage, but who, pursuant to last-chance agreements, were allowed to return to work./3

Aside from Sabatino's testimony and evidence of Rexnord's attendance policy (and its application), there is a temporal factor germane to the mixed-motive defense. In Davidson v. Midelfort Clinic, Ltd., 133 F.3d 499, 512 (7th Cir. 1998), we noted that relevant to a determination that the decision to discharge an employee was not tainted by discriminatory animus was the fact that criticism of the employee on the nondiscriminatory grounds was aired long before the employee's discharge. Similarly, it is incontrovertible that Speedy was disciplined, and half way towards terminal suspension, at the time the retaliatory motive first became a plausible factor. While no single piece of evidence presented conclusively establishes that Rexnord would have fired Speedy absent his having participated in protected conduct under Title VII, we believe that when taken together, along with all reasonable inferences that can be drawn from it, this evidence would support a rational jury's conclusion to that effect. Thus, we hold that the district court did not err in denying Speedy's motion for judgment as a matter of law.

B.  Exclusion of Evidence

In the course of a pretrial conference,

Rexnord learned that Speedy intended to introduce evidence at trial of complaints by two other Rexnord employees--Angela Self and Lisa Willoughby--against Tipmore. Additionally, Rexnord learned that Speedy endeavored to have admitted certain letters and statements which demonstrate that (1) Speedy had confronted Tipmore regarding his treatment of these individuals, and (2) Speedy had met with Sabatino to discuss Tipmore's deportment in relation to these women. The district court, in ruling on Rexnord's motion in limine, precluded Speedy from introducing all such evidence. In so deciding, the district court undertook an analysis pursuant to Fed.R.Evid. 403, and determined that any probative value the evidence might contain was substantially outweighed by the danger of unfair prejudice. Furthermore, the court noted that the proposed evidence would only be relevant in establishing that Rexnord had retaliated against Speedy for opposing a practice made unlawful by Title VII./4 Yet, Speedy never pled in his complaint, referenced in his contentions, nor argued on summary judgment that he had been terminated for such a reason. Rather, in his complaint and throughout the pretrial, Speedy's sole contention was that he was discharged in retaliation for his filing an EEOC complaint, and for assisting Marlin and Sessions in filing their EEOC complaints. Thus, the district court stated that it would not allow Speedy's eleventh-hour additional theory to be presented to the jury. Because the case was not being presented to the jury on that theory, the court held that admission of the evidence would result in confusion of the issues.

Speedy bears a heavy burden in seeking to have this Court overrule the district court's evidentiary decisions. Our standard of review in determining whether the district court committed reversible error in either the admission or exclusion of evidence is whether that decision constituted an abuse of discretion. See United States v. Smith, 230 F.3d 300, 307 (7th Cir. 2000); Geitz v. Lindsey, 893 F.2d 148, 150 (7th Cir. 1990). As we have recognized, the "trial court's balancing of probative value and unfair prejudice is highly discretionary and its decision on admissibility will be accorded great deference." Geitz, 893

F.2d at 150 (internal quotation marks and citation omitted). Furthermore, "[n]o error in either the admission or exclusion of evidence . . . is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice." Fed.R. Civ.P. 61; Palmquist v. Selvik, 111 F.3d 1332, 1339 (7th Cir. 1997). Thus, even if a trial court's ruling is determined to be erroneous, the error may be deemed harmless if the record indicates that the same decision would have been rendered irrespective of the error. See Barber v. Ruth, 7 F.3d 636, 641 (7th Cir. 1993).

Prior to examining the propriety of the district court's decision to exclude the evidence subject to Rule 403, we must first determine the breadth of Speedy's complaint against Rexnord. While the district court concluded that Speedy's case solely claimed retaliation for his having engaged in protected activity, Speedy suggests that this case has always been one of "opposition conduct" as well, and that the district court erroneously created an artificial barrier between the two types of conduct. Since Speedy's confronting of Tipmore in relation to Self and Willoughby would be considered opposition conduct, the probative value is greatly affected by the backdrop against which we evaluate the district court's 403 analysis of the evidence.

Speedy is correct that our cases have held that assisting another employee with her discrimination claim is protected opposition conduct. See McDonnell v. Cisneros, 84 F.3d 256, 262 (7th Cir. 1996). Furthermore, Speedy rightly points out that under the notice pleading regime, a complaint need not recite every element of a legal theory in order to provide notice. See Scott v. City of Chicago, 195 F.3d 950, 951 (7th Cir. 1999). However, we have never wavered from the understanding that the federal notice pleading requires the plaintiff to set out in her complaint a short and plain statement of the claim that will provide the defendant with fair notice of the claim. See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993). As Speedy notes in his brief,

Title VII does make a distinction between conduct that constitutes opposition and conduct that constitutes participation. The statute plainly makes it unlawful to discriminate against an individual because he or she "has opposed any practice made an unlawful employment practice . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing." 42 U.S.C. sec. 2000e-3 (emphasis added). While certain conduct may constitute both opposition and participation, other actions will only be considered opposition or participation.

Speedy's complaint provided Rexnord with notice that he was alleging that the company had retaliated against him for participating in protected activity. As for the protected activity, the complaint specifically references Speedy's actions of assisting Sessions and Marlin in advancing their EEOC charges. This put Rexnord on notice that Speedy's claim could include any activity which would fall under the participation provision of sec. 2000e-3. Thus, even though the complaint did not directly allege retaliation for Speedy's filing of his own EEOC complaint, it was not error for the court to allow the introduction of that matter as part of Speedy's case. But, because Speedy had alleged retaliation for participation in protected activity, Rexnord limited its inquiry to those incidents in which actual grievances were filed./5 Thus, it rightly considered the fact that Tipmore harassed other female employees, and that Speedy had confronted Tipmore about his actions, as immaterial to the retaliation suit it was facing. Cf. Kyle v. Morton High School, 144 F.3d 448, 454 (7th Cir. 1998) (in First Amendment case, plaintiff's failure to indicate in complaint what speech or conduct the defendant had allegedly retaliated against meant that defendant was not sufficiently apprised of the gravamen of plaintiff's claim). Accordingly, the district court correctly limited Speedy's claim to one of retaliation for participation in protected Title VII activities, and we must thus address the district court's Rule 403 decision in that context.

Turning to the materials excluded,

Speedy suggests that, in relation to a participation claim, the evidence wasprobative in that it would have reduced the likelihood of the jury finding that Rexnord would have fired Speedy absent a retaliatory motive. Specifically, Speedy claims that the introduction of the evidence that Sabatino was aware of Tipmore's harassing conduct would have cast doubt on his credibility when he stated that he would have dismissed Speedy solely for his three in thirty rule violations. In opposition, Rexnord posits that whatever the remote probative value of the evidence may have been, the introduction of Tipmore's conduct as it related to Self and Willoughby was highly prejudicial. Rexnord puts forth that had the evidence been admitted, the jury could easily have confused the issue of whether Tipmore's actions were improper with the issue of whether Rexnord retaliated against Speedy.

We find that the district court did not abuse its discretion in excluding evidence regarding Tipmore's harassment of Self and Willoughby, as well as Sabatino's knowledge of Tipmore's activities. The probative value of such evidence was slight at best. Contrary to Speedy's assertion, the evidence does not create any clearer picture of Tipmore's motive to retaliate against Speedy. Furthermore, the jury was aware, through evidence presented relating to Sessions and Marlin, that Sabatino had knowledge of Tipmore's conduct as well as Speedy's confronting of Tipmore. However, the evidence was highly prejudicial in that it would have resulted in the introduction of other complaints against Tipmore as well as Rexnord's attempts to discipline Tipmore. The district court was cognizant of the fact that the jury, if faced with collateral evidence of Tipmore's wrongdoings and Rexnord's failed attempts to curtail those inappropriate actions, might look beyond the retaliation claim and find for Speedy because of Rexnord's blameworthiness in relation to Tipmore.

As we stated above, despite evidence that Sabatino was aware of Tipmore's and Speedy's actions, the jury made a credibility determination that Sabatino would have terminated Speedy absent a retaliatory motive. The introduction of

additional instances of Speedy engaging in opposition conduct was irrelevant to that credibility determination. Given the deferential standard we employ when reviewing evidentiary decisions, we find that the district court did not commit any error in excluding evidence which would necessitate a remand of this matter.

## C. Attorney's Fees

Once the trial had been completed, Speedy's counsel petitioned the district court for costs and attorney's fees as a prevailing party for purposes of Title VII. The district court, citing our decision in McNutt, denied Speedy's motion. In McNutt, as we noted above, we examined the plain language of the Civil Rights Act of 1991, and determined that an employer's showing that it would have taken the same action even absent an unlawful motive is a complete bar to a plaintiff's recovery on a claim of retaliation, such that attorney's fees and costs are not recoverable. See McNutt, 141 F.3d at 708-09. Specifically, we observed that while 42 U.S.C. sec. 2000e-5(g)(2)(B)/6 does allow courts to award injunctive relief, attorney's fees, and/or costs to parties proving mixed-motive discrimination under 42 U.S.C. sec. 2000e-2(m), discrimination based on retaliation is conspicuously absent from the list of protected categories in sec. 2000e-2(m). Speedy suggests on appeal that McNutt was incorrectly decided and requests that this Court overrule the holding of that decision.

In McNutt, we noted that there was a certain allure to the argument that Congress could not have intended to change the mixed-motive standard for one class of unlawful employment practices while allowing the "but-for" rule of Price Waterhouse to operate in retaliation cases. However, we determined that the logic of that position could not "overcome the simple fact that the relief McNutt sought . . . is not authorized by the text of sec.2000e-5(g)(2)(B)." McNutt, 141 F.3d at 709. In this appeal, Speedy has merely rehashed the arguments we rejected in McNutt, and has thus failed to advance any rationale that would warrant the reconsideration of our previous decision. While we thus affirm this decision of the district court, we

close by noting that since our decision in McNutt, both the Eighth Circuit in Norbeck v. Basin Electric Power Cooperative, 215 F.3d 848 (8th Cir. 2000), and the Fourth Circuit in Kubicko v. Ogden Logistics Services, 181 F.3d 544, 552 n.7 (4th Cir. 1999), have come to similar resolutions on the issue.

III.  CONCLUSION

For the foregoing reasons, we Affirm the decision of the district court.

/1 While Justice White's concurrence suggests that an employer's credible statement that the same action should have been taken for legitimate reasons alone would be sufficient proof for a mixed-motive affirmative defense, see Price Waterhouse, 490 U.S. at 261, the plurality opinion finds that suggestion "baffling," and requires some additional measure of proof. See id. at 252 n.14.

/2 Speedy quarrels with the fact that, absent Sabatino's statement, the jury relied upon the same evidence to reach what he believes are antithetical conclusions: that Rexnord had retaliated against Speedy, and that Rexnord would have fired Speedy regardless of any retaliatory motive. We disagree that the decisions are contradictory, and furthermore note that any contradiction does not alter the standard of review. In this appeal, we examine whether the district court correctly denied Speedy's judgment as a matter of law, and consequently whether a rational jury could find that Rexnord would have fired Speedy absent a retaliatory motive. We are thus not concerned here with the jury's first finding of retaliation.

/3 Rexnord utilizes last-chance agreements at the terminal suspension stage. The customary practice is that if (1) an employee or the union requests, (2) there are mitigating circumstances, and (3) there is a commitment on the part of the employee to improve his or her attendance, then the company will enter into such an agreement with the employee, and allow that employee to return to work. In Speedy's case, no request for such an agreement was made, and no commitment towards increased attendance was evidenced.

/4 Title VII's anti-retaliation provision protects two types of activities, commonly referred to as (1) opposition conduct, and (2) participation conduct. According to the statute:
It shall be an unlawful employment practice for an employer to discriminate against any of his

employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter. 42 U.S.C. sec. 2000e-3 (emphasis added).

/5 For example, during Speedy's deposition, Rexnord's attorney questioned him as to whether he had "any personal knowledge of any one of the people that you say discussed issues with them and Mr. Tipmore filing a grievance, personal knowledge of any grievance?" Rexnord's attorney then clarified the scope of his question by stating "And again a grievance, we're clear that is a grievance form that you file . . .?"

/6 That section reads in relevant part:
On a claim in which an individual proves a violation under section 2000e-2(m) of this title and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court (i) may grant declaratory relief . . . and attorney's fees and costs demonstrated to be directly attributable only to pursuit of a claim under section 2000e-2(m) of this title.