In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-1369

JAMES HENDERSON,

*Plaintiff-Appellant,*

*v.*

ROBERT WILKIE, Secretary,
U.S. Department of Veterans
Affairs,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:15-cv-04445 — **Sidney I. Schenkier**, *Magistrate Judge.*

ARGUED FEBRUARY 14, 2020 — DECIDED JULY 15, 2020

Before SYKES, *Chief Judge*, and RIPPLE and SCUDDER,
*Circuit Judges.*

RIPPLE, *Circuit Judge.* James Henderson filed this employment discrimination action against the Secretary of the Department of Veteran Affairs ("VA"). Mr. Henderson, who is African American, alleged race and age discrimination and retaliation claims, in violation of Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e-2, and the Age Discrimination in Employment Act, 29 U.S.C. § 621. The district court granted summary judgment to the VA in December 2016. Mr. Henderson appealed, and, in December 2017, a panel of this court vacated and remanded for further proceedings.[1] The panel held that, on the record before it, there was a genuine issue of material fact as to whether the VA's explanations for not selecting Mr. Henderson for a criminal investigator position were pretext for racial discrimination. *See Henderson v. Shulkin*, 720 Fed. App'x 776, 786 (7th Cir. 2017).

On remand, the parties consented to proceed before a magistrate judge.[2] Mr. Henderson's race discrimination claim was tried by a jury in September 2018. The jury returned a verdict for the VA, and the district court entered final judgment. Mr. Henderson then moved for a new trial under Federal Rule of Civil Procedure 59(a), claiming error in two evidentiary rulings. The district court denied the motion.

Mr. Henderson timely appealed.[3] We now affirm the judgment of the district court because it did not abuse its discretion in ruling on the evidentiary issues.

---

[1] Mr. Henderson abandoned his age discrimination and retaliation claims. *See Henderson v. Shulkin*, 720 Fed. App'x 776, 778 (7th Cir. 2017).

[2] *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

[3] We have jurisdiction pursuant to 28 U.S.C. § 1291. The district court's jurisdiction was premised on 28 U.S.C. §§ 1331 and 1343.

## I

## BACKGROUND

Mr. Henderson joined the VA police department at Edward Hines, Jr. VA Hospital ("Hines") in Hines, Illinois, in 1986.[4] He held several positions at Hines, including patrol officer, sergeant, lieutenant, and assistant chief.[5] In 2007, Mr. Henderson became a detective at Hines and was serving in that capacity at the time of trial.

In March, Gary Marsh became the chief of police at Hines. In September 2013, Chief Marsh decided to fill an open position for a criminal investigator. Chief Marsh and the human resources department composed a job description, a list of desired qualifications, a hiring timeframe, and a selection process. The job announcement for the criminal investigator position was posted on usajobs.gov on October 16, 2013. It stated that the candidate must be able to conduct criminal investigations and "must possess an extensive knowledge of generally accepted investigator principles, techniques[,] methods and procedures" and "be physically, emotionally and mentally fit."[6] The announcement directed applicants to submit a resume containing job descriptions that "sufficiently detail the level of experience."[7] It explained that it was necessary "to submit a thorough and complete

---

[4] R.115 at 160.

[5] *Id.* at 162–65.

[6] R.117-1 at 2.

[7] *Id.* at 5–6.

resume" describing their experience because the selecting official would not have access to personnel folders.[8]

Fifteen individuals applied for the criminal investigator position, including Mr. Henderson and Cary Kolbe. Kolbe, a white male, was a lieutenant at Hines when he applied. After joining the VA police department at Hines in 2009, he had accumulated several disciplinary issues, including allegations that he sexually harassed a female coworker, falsified a police report, violated VA police policy by purchasing an unauthorized weapon and bringing it to Hines, and by being intoxicated while on duty. Chief Marsh was aware of Kolbe's disciplinary issues.[9]

At the first stage of the selection process, a three-person panel reviewed the resumes of the fifteen applicants. The names of the applicants were redacted from the resumes, and the resumes lacked any racial identifiers. The panelists scored the resumes based on the applicants' relevant experience in conducting, leading, and supervising investigations. After each panelist gave each resume a score, a human resources specialist identified the three candidates with the highest resume scores. Only those three applicants proceeded to the second stage of the selection process, the interview panel.

Mr. Henderson's resume did not score well enough to proceed to the interview panel. Only the candidates with the top three scoring resumes were selected for interviews; Mr. Henderson's resume received the tenth highest score.

---

[8] *Id.* at 6.

[9] R.114 at 114–15, 129–33.

The resumes of two other African American candidates scored higher than Mr. Henderson's resume. The resume of one African American candidate ranked second, and that candidate proceeded to the interview stage. Although Mr. Henderson's resume indicated that he was a detective and that he had training in conducting investigations, his resume did not describe the details of his responsibilities.[10] Kolbe's resume, in contrast, indicated that he had experience in both conducting and leading investigations, including years of experience as a criminal investigator in the Navy where he had supervised and trained more than sixty officers in conducting investigations.[11] Similarly, the other two top-scoring resumes described in detail the candidates' qualifications in planning and leading investigations.[12]

The interviews were conducted by telephone before a separate three-person panel. The interview panel assigned scores to these three candidates based on their respective performances, and the scores were forwarded to Chief Marsh. Chief Marsh selected the candidate with the highest scoring interview—Kolbe. Chief Marsh testified that he selected Kolbe because Kolbe had earned the highest scores on both his resume and interview.[13]

---

[10] *See* R.117-1 at 8.

[11] *See id.* at 20–23.

[12] *See id.* at 136–39, 143–48.

[13] R.114 at 163 (Chief Marsh testified that selecting the highest scoring candidate was the "only way" he knew who was "eligible.").

## II

## DISCUSSION

The basic principles that govern our review of the denial of a motion for a new trial are well-settled. We review a denial of a motion for a new trial under Federal Rule of Civil Procedure 59(a) for an abuse of discretion. *See Abellan v. Lavelo Prop. Mgmt., LLC*, 948 F.3d 820, 830 (7th Cir. 2020). Mr. Henderson contends that the district court improperly excluded evidence. We review a district court's decision to exclude evidence for an abuse of discretion. *Stegall v. Saul*, 943 F.3d 1124, 1127 (7th Cir. 2019). In describing the so-called "abuse of discretion" standard in this context, we have said that a party seeking to overturn the district court's evidentiary ruling "bears a heavy burden" because a "'trial court's balancing of probative value and unfair prejudice is highly discretionary.'" *Speedy v. Rexnord Corp.*, 243 F.3d 397, 404 (7th Cir. 2001) (quoting *Geitz v. Lindsey*, 893 F.2d 148, 150 (7th Cir. 1990)). As a general rule, "[u]nless justice requires otherwise," errors in excluding evidence will generally not warrant a new trial. Fed. R. Civ. P. 61. We will not reverse the court's judgment, even if it is erroneous, "if the record indicates that the same decision would have been rendered irrespective of the error." *Speedy*, 243 F.3d at 404.

Finally, we emphasize that to preserve evidentiary issues for appeal, a party must "make an offer of proof or otherwise explain the substance of the evidence he sought to present." *Carmody v. Bd. of Trustees of Univ. of Ill.*, 893 F.3d 397, 407 (7th Cir. 2018); *see also* Fed. R. Evid. 103(a)(2) ("A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party and … if the ruling excludes evidence, a party informs the court of its

substance by an offer of proof, unless the substance was ap-parent from the context."). With these principles before us, we examine each of Mr. Henderson's contentions.

## A.

We now turn to the motions in limine that Mr. Hender-son asks us to examine. The VA filed several motions in limine with the parties' joint proposed pretrial order. Two of these motions, the VA's first and fifth motions in limine, form the basis of Mr. Henderson's appeal. They state the fol-lowing:

> (1) Motion to bar the testimony of the objected-to witnesses because they were not disclosed in answers to pertinent interrogatories as having relevant information; they lack relevant testimony; and the probative value of any testimony would be outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.
>
> ***
>
> (5) Motion to bar any evidence regarding events post-dating the selection process, in-cluding but not limited to subsequent promo-tions or discipline issued to Kolbe or Marsh.[14]

Mr. Henderson believes that he was denied a fair trial be-cause the district court's rulings on these motions in limine

---

[14] R.74 at 9–10.

excluded evidence that would have been probative of Chief Marsh's discriminatory intent.

**B.**

We first examine whether the district court abused its discretion in granting the VA's first motion in limine that sought to prevent Mr. Henderson's witnesses from testifying on subjects not disclosed in Mr. Henderson's interrogatory answer. In the interrogatory, the VA had asked Mr. Henderson the following: "Please identify all persons with knowledge or information relating to any claim or defense in this action, and describe in detail each person's knowledge."[15] At the parties' initial pretrial conference, the VA informed the district court that it believed that several of Mr. Henderson's witnesses were going to testify at trial about their own discrimination claims against Chief Marsh. However, the VA noted that Mr. Henderson had not disclosed in his interrogatory answer that these witnesses had their own discrimination claims.[16] The VA therefore asked that the district court preclude testimony about any such discrimination claims.

Although the parties dispute the point, it is clear from the record that the district court never ruled on the first motion in limine. Prior to the initial pretrial conference, Mr. Henderson had not submitted a witness list that described the nature of each witness's testimony. Consequently, the district court directed the parties to review and revise their witness lists. It did note, however, that it was "in-

---

[15] R.101-4 at 1.

[16] R.79 at 45.

clined" to limit the testimony of Mr. Henderson's witnesses to only what Mr. Henderson had disclosed in his interrogatory answer.[17] It reasoned that the VA should have been able to rely on the answer to make litigation-related decisions, such as whether to depose a witness.[18] The court instructed Mr. Henderson's counsel to keep counsel for the VA apprised of any plans to have a witness testify beyond what had been disclosed in interrogatories.[19] The court then continued the VA's first motion in limine and scheduled a continued pretrial conference.

On August 27, 2018, the parties reconvened before the district court for the continued final pretrial conference. The VA had narrowed its original list of twenty-four objected-to witnesses to ten.[20] Mr. Henderson's counsel confirmed that they intended to elicit testimony that would exceed the scope of what Mr. Henderson had disclosed in his interrogatory answer.[21] The court explained that, unless Mr. Henderson's counsel could show that it would be an abuse of its discretion, it was inclined to prohibit Mr. Henderson's witnesses from testifying about topics that should have been disclosed in his interrogatory responses.[22] If the VA "open[ed] the door" to those undisclosed topics,

---

[17] *Id.* at 50.

[18] *Id.*

[19] *Id.* at 56.

[20] R.80 at 32.

[21] *Id.* at 43.

[22] *Id.* at 44.

however, the court stated that it would permit the witnesses to testify about them.[23]

Although the parties had discussed the objected-to testimony before the reconvened pretrial conference, they were unable to agree on the appropriate scope of testimony.[24] Moreover, Mr. Henderson had not provided the VA with a list of his witnesses who were going to testify on subjects outside the scope of his interrogatory answer.[25] Because the parties had failed to confer and prepare for the continued pretrial conference as instructed, the court deferred ruling on whether to exclude the objected-to testimony.[26] The court instructed the parties to confer before trial.[27]

---

[23] *Id.*

[24] *Id.* at 48.

[25] *Id.* at 49.

[26] It was entirely appropriate for the district court to defer ruling on this motion in limine until trial. If the district court is unable to "accurately or sufficiently" evaluate the evidentiary submissions, "it is necessary to defer ruling until during trial, when the trial judge can better estimate its impact on the jury." *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997).

[27] R.80 at 51. The minute order following the pretrial conference confirms that the district court deferred ruling on the first motion in limine:

> (c) with respect to the defense objection to the scope of the testimony of Witnesses Nos. 2 (Michael Leonard), 3 (David Scott), 4 (Donald Barnes), 5 (Thomas Johnson), 6 (James Runge), 8 (Larry Bailey), and 20 (Nina Graves) from the plaintiff's will call list, *we defer ruling for trial*, which [sic] urging the parties to further confer to attempt to reach resolution on the scope of the testimony of those witnesses. We remind the parties that time
>
> (continued … )

After the final pretrial conference, the VA's counsel sent an email to Mr. Henderson's counsel asking him to identify the testimony that he intended to present at trial that would exceed the scope of Mr. Henderson's interrogatory answer. Mr. Henderson's counsel declined to provide that information, stating that he "wish[ed] to preserve any issues for appeal" and that he would address any issues with the court during trial.[28]

Before opening arguments, the VA's counsel informed the court that Mr. Henderson's counsel had refused to discuss the anticipated testimony with them. The court asked Mr. Henderson's counsel whether he "intend[ed] to try to question these witnesses about things other than what was disclosed as their knowledge during discovery."[29] Mr. Henderson's counsel replied, "Absent the door opening, no."[30]

Nevertheless, twice during trial, Mr. Henderson's counsel attempted to elicit the objected-to testimony even when the VA had not opened the door to such testimony. The first instance involved Mr. Henderson's witness Michael Leonard. When Leonard was preparing to testify, Mr. Henderson's counsel asked the court whether *his* questioning of Leonard would "open the door" for *him* to ask "other wit-

---

( … continued)
    spent during trial resolving those disputes will count
    against the respective parties' allotted time … .
R.78 at 1 (emphasis added).

[28] R.101-5 at 1.

[29] R.113 at 16.

[30] *Id.*

nesses about things that happened with Chief Marsh."[31] After some further discussion, the district court responded, "I don't see why it does."[32] Mr. Henderson's counsel also asked whether he could ask Leonard about the details of Leonard's pending discrimination case against Chief Marsh. The district court, citing Federal Rule of Evidence 403 concerns, instructed Mr. Henderson's counsel that he could not ask questions about the details of either the termination or the ongoing litigation. However, the court instructed the counsel that they *could* question Leonard about the fact that he was terminated and the fact that there was ongoing litigation because that information was "relevant to the issue of bias or motive."[33] Mr. Henderson's counsel did not attempt to elicit the objected-to testimony. The second instance was when Mr. Henderson's witness David Scott took the stand. When Scott took the stand, Mr. Henderson's counsel asked the court whether he could ask Scott about information that should have been—but was not—disclosed in Mr. Henderson's interrogatory answer. The court did not allow this testimony; Mr. Henderson's counsel merely responded, "Okay."[34]

Mr. Henderson contends that, by granting this motion in limine, the district court unfairly limited his evidentiary

---

[31] R.115 at 6.

[32] *Id.* at 9.

[33] *Id.* at 10.

[34] *Id.* at 126–27. The court noted that it had "never seen what the specific interrogatory response was" and stated, "it's kind of [a] late time to be doing something that I asked you all to do six weeks ago." *Id.* at 126.

presentation and that he is entitled to a new trial. It is clear, however, that the district court did not rule on the motion in limine. Moreover, Mr. Henderson's counsel expressly told the court that he did not intend to ask witnesses about topics that exceeded the scope of Mr. Henderson's interrogatory answer. This representation constituted a waiver. *See Harrison v. Burlington Northern R.R. Co.*, 965 F.2d 155, 158 (7th Cir. 1992) ("We will not reverse a trial court's judgment on a ground that was not presented to it."). As the district court stated in denying a motion for a new trial,

> the onus was on plaintiff to provide some good reason why he should be allowed to elicit testimony of witnesses on subjects not disclosed in plaintiff's sworn interrogatory responses. Plaintiff never accepted that challenge. He cannot now complain of error—much less error warranting a new trial—by being held to his sworn interrogatory responses.[35]

A district court's evidentiary rulings are "highly discretionary," and Mr. Henderson certainly has failed to bear his "heavy burden" in seeking to overturn them. *See Speedy*, 243 F.3d at 404 (quoting *Geitz*, 893 F.2d at 150). Because he failed to explain the substance of the testimony he sought to present at trial, we cannot conclude that the district court erred in excluding it. *See Peals v. Terre Haute Police Dep't*, 535 F.3d 621, 630 (7th Cir. 2008) ("If the party objecting to the exclusion of the evidence fails to make a proper offer of proof,

---

[35] R.104 at 11–12 (internal citation omitted).

'there is no basis for a finding of prejudice.'" (quoting *Nanda v. Ford Motor Co.*, 509 F.2d 213, 223 (7th Cir. 1974))).

## C.

We now examine whether the district court erred in granting the VA's motion in limine to exclude evidence of events occurring *after* Chief Marsh selected Kolbe as the criminal investigator. Notably, the district court, in considering this motion, focused narrowly on the specific evidence that Mr. Henderson sought to have admitted: first, Mr. Henderson wanted the jury to hear evidence that, after Chief Marsh selected Kolbe, the Chief had discriminated against African Americans in other instances; second, Mr. Henderson wanted the jury to hear that, after Kolbe's selection, he was the subject of disciplinary scrutiny implicating his professional fitness.

### 1.

The district court ruled that it would not permit evidence that Chief Marsh had taken discriminatory action against other African Americans after he awarded the criminal investigator job to Kolbe. Mr. Henderson submits that this post-selection evidence was crucial to his proving Chief Marsh's discriminatory intent in selecting Kolbe instead of Mr. Henderson.

The district court determined that, because many of those instances were still in litigation, their admission would create unwarranted confusion. Relying on Federal Rule of Evidence 403, the court expressed concern that the evidence

would confuse the jury by creating "a trial within a trial."[36] *See Manuel v. City of Chicago*, 335 F.3d 592, 597 (7th Cir. 2003) (affirming the district court's exclusion of evidence where the evidence would result in "mini-trials" and the slight probative value did not outweigh the risk of unfair prejudice, confusion to the jury, and delay).

The district court was on solid ground and certainly did not abuse its discretion. Mr. Henderson told the district court that he wanted to ask the individuals who were not promoted "about what happened."[37] The district court's concern about the possibility of trials within the trial and concomitant juror confusion was therefore realistic. Moreover, the district court's exclusion of this prior selection evidence hardly precluded Mr. Henderson from introducing other evidence of Chief Marsh's alleged discriminatory animus from the period before Kolbe's selection. The court concluded, quite reasonably, that the slight additional value from this cumulative evidence was outweighed by the risk of jury confusion. Mr. Henderson has not met his "heavy burden" of showing that the district court abused its discretion in excluding this evidence. *See Speedy*, 243 F.3d at 404.

Finally, Mr. Henderson has included in his opening brief other arguments concerning evidence that he never described to the district court when the court considered the parties' evidentiary issues. We certainly cannot consider evidence that Mr. Henderson describes for the first time on ap-

---

[36] R.79 at 30.

[37] *Id.* at 29.

peal.[38] *See Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012). "It is a well-established rule that arguments not raised to the district court are waived on appeal." *Id.*; *see also Harrison*, 965 F.2d at 158 ("We will not reverse a trial court's judgment on a ground that was not presented to it."). Federal Rule of Evidence 103 provides in relevant part that "[a] party may claim error in a ruling to … exclude evidence *only if* the error affects a substantial right of the party *and* … a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context." Fed. R. Evid. 103(a)(2) (emphasis added).

## 2.

At the pretrial conference, Mr. Henderson also wanted to present testimony about disciplinary matters implicating Kolbe that occurred *after* his selection for the criminal investigator position.[39] The district court ruled that it would exclude the evidence because it was not relevant to show the discriminatory animus of Chief Marsh at the time of hiring, and because it was likely unduly prejudicial under Federal Rule of Evidence 403.[40]

In deciding the post-trial motion under Rule 59, the district court observed that Mr. Henderson "d[id] not seek to revisit the Court's decision to bar evidence of Mr. Kolbe's own post-promotion conduct."[41] The court made this obser-

---

[38] *See* Appellant's Br. 13–18.

[39] *See* R.79 at 30–31.

[40] *Id.*

[41] R.104 at 6–7.

vation for good reason: Mr. Henderson had omitted mention of this issue in his motion for a new trial.[42] Now, before us, Mr. Henderson only makes a passing reference to it with no specific argument.[43] This matter is clearly waived. In any event, as this case comes to us, it is difficult to see the relevance of such evidence to the issue before the jury.[44]

---

[42] R.98 at 4–12.

[43] *See* Appellant's Br. at 12.

[44] We therefore cannot accept Mr. Henderson's contention that the district court abused its discretion by categorically precluding post-selection evidence. His reliance on *Riordan v. Kempiners*, 831 F.2d 690 (7th Cir. 1987), is futile. In *Riordan,* we said that "a blanket exclusion of evidence of events that occurred before or after the discrimination is arbitrary." *Riordan*, 831 F.2d at 699.

The situation here is clearly distinguishable from the situation in *Riordan*. In *Riordan*, an employment discrimination action, the district court granted numerous motions in limine that excluded "all evidence of events subsequent to Riordan's filing of her claim for discrimination in December 1983—even though she didn't quit the Department [until] August 1984." *Id.* at 698. The district court in *Riordan* "gave no reasons for most of the exclusions," and we were not satisfied that the district court even exercised its discretion. *Id.* at 697. We held that the district court erred in implementing "a blanket exclusion of evidence of events that occurred before or after discrimination." *Id.* at 699. Here, the district court provided specific reasons for excluding the post-selection evidence, and it excluded the evidence only after it gave Mr. Henderson ample opportunity to explain what he sought to present at trial.

Finally, we emphasize that there is no question that any error in the admission of evidence was clearly harmless. The evidence against Mr. Henderson was very strong. His candidacy hit a dead end when a blind resume analysis by a screening panel ranked him in tenth place with two African American candidates ahead of him. Although the jury did hear that a panelist had a social relationship with Kolbe, it also

(continued … )

## CONCLUSION

The judgment of the district court is affirmed.

AFFIRMED

---

( … continued)

heard, however, that this panelist awarded Mr. Henderson's resume a *higher* score than either of the other panelists. Moreover, the panelist did not award Kolbe's resume a score that was higher than the other panelists. The panelist testified that she did not confer with the other panelists regarding the scores.

Again, we address the question of harmless error only for the sake of completeness. The district court's rulings are solidly supported by the record. Mr. Henderson received a fair trial.