NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 23, 2021*
Decided December 15, 2021

**Before**

MICHAEL B. BRENNAN, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

CANDACE JACKSON-AKIWUMI, *Circuit Judge*

No. 19-2042

| | |
|---|---|
| ALLISAH M. LOVE,<br>        *Plaintiff-Appellant*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 09-cv-3631 |
| CITY OF CHICAGO, et al.,<br>        *Defendants-Appellees*. | Edmond E. Chang,<br>*Judge*. |

**O R D E R**

This case dates back to 2009, when Allisah Love sued the City of Chicago and several police officers for conspiring to violate her civil rights and several other constitutional violations and state-law torts. As relevant to this appeal, in 2007, Love

---

* We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

was arrested for trespass while accompanying an acquaintance to retrieve an impounded car. Love alleged that the arrest was part of an ongoing conspiracy against her and her family. The district court dismissed most of Love's complaint, including the bulk of her conspiracy claims, but it recruited counsel and held a trial in 2018 on her claims about her 2007 arrest. The jury found for the defendants. Love appeals the denial of her motion for a new trial and the earlier dismissal of her conspiracy claims. But Love has not met her burden of showing that the district court abused its discretion in any of its rulings, and she waived her challenge to the dismissal of her conspiracy claims. Therefore, we affirm.

## Background

Love's claims that proceeded to trial involved an incident in 2007 when she was arrested for trespass at a City-owned auto impound lot operated by a private contractor. Love accompanied an acquaintance to help her retrieve an impounded car. They had difficulty starting the car and were refused assistance by lot staff, so Love went to a trailer on the site to speak with a manager. There, a security officer named Niyell Powell—who Love later discovered was an off-duty Chicago police officer working for the lot's operator—approached Love and informed her that only vehicle owners were allowed inside the trailer. When the officer refused to bring out a manager, Love threatened to call the Chicago Police Department to complain, and then both she and Powell dialed 911. Several police officers arrived at the lot, spoke to Powell but not Love, and immediately placed Love under arrest. The officers eventually told Love that she was being arrested for trespassing, but she asserts that Powell had never asked her to leave the lot.

Love sued the City, Powell, and the arresting officers, alleging that the arrest was part of a decade-long conspiracy against her and her family. Her 15-count complaint alleged that agents of the City have worked against her since she was employed at the City's Office of Emergency Management and Communications (from 1998 to 2001), and as recently as 2014 when she attempted to assist relatives with their retirement benefits. With respect to her arrest at the auto pound, she alleged that the officers falsely arrested and maliciously prosecuted her for criminal trespass.

The district court dismissed most of Love's claims. It rejected three of four counts of conspiracy as implausible because there was no basis for inferring that the individuals she accused of disparate incidents dating back to the 1990s "even knew each other, let alone any allegations about the circumstances of how and when they banded

together to conceive then advance such a protracted scheme." All that remained after the dismissal were claims arising from her 2007 trespass arrest (including a narrow claim of conspiracy to commit false arrest), which continued to trial.

At trial, Love testified that she wanted to see a manager of the impound lot to discuss how to get her friend's car off the lot, but Powell prevented her from doing so. According to Love, she was not belligerent or disruptive, and the officer did not ask her to leave. Powell, on the other hand, testified that he told Love to leave, and multiple police officers testified that Love was "screaming" and "causing a disturbance," though none said this during their discovery depositions.

During closing arguments, counsel for both parties made statements about Love and her conduct at the pound lot. Love's counsel mentioned (consistent with the evidence) that Love had "threatened to complain" when the security officer refused to bring out a supervisor to speak with her. Defendants' counsel stated that Love had been argumentative and speculated that lot personnel did not want to be involved with her because they "[s]aw it as trouble."

During its deliberations, the jury sent a note to the judge asking if an occupant's motivation in asking an individual to depart property was relevant to whether there was a trespass. After conferring with the parties, the court provided a supplemental instruction that relied on *People v. Yutt*, 597 N.E.2d 208 (Ill. App. Ct. 1992). The instruction stated: "In response to your question, a person commits criminal trespass when the person refuses to depart on the instruction of an occupant even if the occupant's instruction is motivated by personal reasons rather than motivated by acting on behalf of the owner."

The jury found for the defendants. Love then moved for a new trial under Federal Rule of Civil Procedure 59(a). The district court denied the motion, concluding that Love had not established that the jury's verdict was against the manifest weight of the evidence or that the trial was otherwise unfair.

## Analysis

Love's notice of appeal targets the district court's denial of her motion for a new trial and its prior dismissal of her claims about an overarching conspiracy to violate her

rights.[1] We begin with the latter issue, which we can dispose of quickly. Although Love asserts error in the dismissal of the conspiracy claims in her opening brief, she waived her appellate challenge of that ruling because she did not develop an argument or cite any authority. *See Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012). Raising an argument in a reply brief does not revive it. *See Wonsey v. City of Chi.*, 940 F.3d 394, 398–99 (7th Cir. 2019).

Love next argues that the district court should have granted her a new trial based on several errors that rendered the proceedings unfair. We review the district court's denial of Love's Rule 59(a) motion for abuse of discretion, and will order a new trial in a civil case "only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 833 (7th Cir. 2016) (internal citation omitted).

Love identifies several alleged errors at trial. First is her challenge to the court's issuance of a supplemental jury instruction in response to the jury's question about criminal trespass law. We conclude that the court's response was not an abuse of discretion. In reviewing the court's response, we ask: (1) whether the instructions as a whole fairly and adequately treat the issues; (2) whether the supplemental instruction is a correct statement of the law; and (3) whether the district court answered the jury's questions specifically. *Morgan v. City of Chi.*, 822 F.3d 317, 342 (7th Cir. 2016) (quoting *United States v. Danford*, 435 F.3d 682, 688 (7th Cir. 2005)). Here, the court's instruction was appropriately targeted to clear up the jury's confusion about the criminal trespass law, and it accurately stated the law.

True, the court's illustrative case, *Yutt*, differed from the facts of this case because it took place on wholly private property. Love therefore argues that the instruction misinformed the jury because her supposed trespass took place on a City-owned impound lot. But this has nothing to do with the issue the jury inquired about, which was whether the motive for ordering someone to leave matters. On that subject, the supplemental instruction accurately stated that a person commits criminal trespass by

---

[1] We requested briefing on the jurisdictional question of whether Love's appeal should be limited to review of the denial of her motion for a new trial. Because the record supports the joint position of the parties that Love timely submitted her post-trial motion within the 28-day period, see Fed. R. Civ. P. 59(b), our jurisdiction is proper over Love's appeal from the judgment and the preceding interlocutory decisions.

refusing to depart at an occupant's instruction—regardless of the occupant's motivation—because the trespass statute's "basic purpose" is to prevent violence. *See Yutt*, 597 N.E.2d at 214. For purposes of explaining that principle, the distinction Love urges between public and private property is irrelevant.

Love also argues that the supplemental instruction conflicts with *People v. Hsiu Yan Chai*, 16 N.E.3d 887 (Ill. App. Ct. 2014), which stated that a police officer—rather than an owner or occupant—could not provide notice of trespass to the plaintiff under the circumstances of that case. However, that case is irrelevant because when Powell told Love to leave the premises, he was on duty as a private security guard, acting on behalf of the impound company; he was not acting as a police officer and did not even suggest that he was one. Because the district court correctly stated the law applicable to Love's case and answered the jury's inquiry, the court did not abuse its discretion by giving the supplemental instruction.

Next, Love asserts that the district court concealed important facts from the jury, namely, that the impound lot was located on "state-supported land" and that the security officer was also an off-duty Chicago police officer. Because the jury was informed only that Powell was acting as an agent of the towing company, and not that the company was contracted by the City, Love argues that the jury was deprived of a vital link between her arrest and the City's purported conspiracy against her family.

Like the district court, we are uncertain what particular ruling Love means to challenge with this argument. She does not point to, and we do not see in the record, any ruling by the court that prevented Love from introducing evidence about Powell's second job or the owner of the land occupied by the impound lot. There was a stipulation of "background facts" that did not include this information, but, as far as we can see, no attempt to elucidate this information from any witness or otherwise put it before the jury. In ruling on Love's new-trial motion, the district court speculated that Love may have been challenging the jury instruction on trespass, which the court adapted from the elements of criminal trespass to private, not public, land. But Love (through counsel) agreed to this instruction. *See Black v. Wrigley,* 997 F.3d 702, 709 (7th Cir. 2021) ("[A] party cannot complain of errors. . .to which it consented.").

Love also challenges the exclusion of facts related to why she was helping her acquaintance retrieve the impounded car—because the acquaintance's son and Love's brother had been arrested (falsely, Love says) in it. Finally, Love argues that the court

erred by excluding the citizen's complaint she had submitted against Powell, which the court concluded was irrelevant to her claim and prejudicial to the defendants.

The court's evidentiary rulings, which we review for abuse of discretion, were not erroneous. A party seeking a new trial based on erroneous evidentiary rulings bears a "heavy burden." *Alverio v. Sam's Warehouse Club*, 253 F.3d 933, 942 (7th Cir. 2001). We give "great deference" to the trial court's weighing of probative value against prejudice. *Speedy v. Rexnord Corp.*, 243 F.3d 397, 404 (7th Cir. 2001). Love did not explain her challenge to the exclusion of Powell's relationship to the City or identify a specific erroneous ruling, so she has waived this argument. *See Puffer*, 675 F.3d at 718. Even if Love had articulated an argument, the exclusion of Powell's connection to the City was not erroneous because it was irrelevant to Love's false-arrest claim that the jury was evaluating, which turned on whether the arrest was supported by probable cause. *See Thayer v. Chiczewski*, 705 F.3d 237, 246 (7th Cir. 2012). The same is true with respect to who owned the land on which the impound lot sat. By the agreement of the parties, the district court simplified the elements of a trespass claim under Illinois law to line up with disputed issues the jury had to decide, such as whether someone with authority had ordered Love to leave. The lot's ownership was not material to any issue before the jury. Love could not have been prejudiced by the exclusion of evidence relevant only to the mega-conspiracy claims that had been dismissed. And the court acted within its broad discretion by concluding that Love's complaint against Powell would be overly prejudicial to the jury. *See Speedy*, 243 F.3d at 404.

Love also challenges the court's denial of her requests to reopen discovery and require production of additional video footage from the incident at the auto pound. Fact discovery was initially scheduled to close in 2014 and had already been extended multiple times when Love moved in 2016 to reopen discovery to require production of footage from cameras at the lot that had not been requested yet. She argues that the footage was important to the jury's understanding of the events, because it would show that she had not caused the disturbance that the officers asserted she did.

The court's denial of Love's motion to reopen discovery to try to obtain more video surveillance footage was also a proper exercise of discretion. *See Winters v. Fru-Con Inc.*, 498 F.3d 734, 743 (7th Cir. 2007). Love did not explain her delay over the course of discovery in seeking the footage—which had been captured over a decade earlier—or how it could prove that she was not trespassing. Moreover, although the court denied Love's motion to reopen discovery, it required the defendants to produce an affidavit about the locations at the pound that the surveillance cameras would have captured

(the entrance gate and the employee parking lot), and Love does not explain how those locations were relevant to her arrest outside the trailer. After reviewing the affidavit, the court concluded that there was "insufficient reason to believe that more discovery on this topic will lead to relevant evidence" and enforced the existing discovery cutoff, a decision that was well within its discretion.

Love identifies several other purported errors that she claims warrant a new trial, which we consider in turn. First, Love contends that, in his closing argument, defense counsel improperly attacked her credibility and made prejudicial statements to the jury. But Love waived this argument because she did not object at trial. *See Venson v. Altamirano*, 749 F.3d 641, 657 (7th Cir. 2014). Moreover, improper remarks during closing arguments "rarely are so serious as to constitute reversible error," and the ones that Love points to are far from extraordinary. *Id.*

Second, Love contends that two police officers contradicted their deposition testimony about what Love did at the impound lot. But the inconsistencies that Love identifies also do not warrant a new trial. Inconsistent statements can be highlighted to the jury through impeachment—as Love's counsel did. *See Fine v. Ryan Int'l Airlines*, 305 F.3d 746, 753 (7th Cir. 2002). Moreover, Love does not explain how the relatively minor inconsistencies she points to influenced the verdict or rendered the trial unfair. *See Marcus & Millichap Inv. Servs. v. Sekulovski*, 639 F.3d 301, 313–14 (7th Cir. 2011).

Next, Love argues that her recruited counsel prejudiced her case by characterizing her negatively during closing arguments and by withholding several key facts from the jury. We see no evidence of ineffectiveness on the part of Love's recruited counsel, but it would not matter if we did. There is no statutory or constitutional right to counsel in a federal civil case, thus even inadequate representation is not grounds for ordering a new trial. *See* 28 U.S.C. § 1915(e)(1) (court "may request" counsel to assist indigent civil litigants pro bono); *Stanciel v. Gramley*, 267 F.3d 575, 581 (7th Cir. 2001). Finally, Love's assertion that cumulative error warrants a new trial is conclusory, but in any event, "the cumulative effect of various non-errors does not, and cannot, amount to error warranting a new trial." *Farnik v. City of Chi.*, 1 F.4th 535, 542 (7th Cir. 2021).

AFFIRMED